**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CARZANNA JONES and HEYNARD L. PAZ-CHOW, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

ROHIT CHOPRA, in his official capacity as Director, Consumer Financial Protection Bureau, and CONSUMER FINANCIAL PROTECTION BUREAU,

Defendants.

Civil Action No. 18-2132 (BAH)

Judge Beryl A. Howell

**MEMORANDUM OPINION AND ORDER**

After five years of litigation, the parties in this putative class action have reached a Settlement Agreement. The agreement provides a $6,000,000 Settlement Fund for a class of eighty-five Black, African American, and/or Hispanic Consumer Response Specialists at the Consumer Financial Protection Bureau ("CFPB") and requires the implementation of certain programmatic changes at the CFPB, in exchange for the full resolution of plaintiffs' claims and the release by all class members of all claims of discrimination, harassment, or retaliation arising from the same nucleus of operative facts as the allegations in this matter. Named plaintiffs Carzanna Jones and Heynard Paz-Chow have now filed an Unopposed Motion for Provisional Class Certification, Preliminary Approval of Class Settlement Agreement, and Approval/Distribution of Notice to Class of Settlement ("Pls.' Mot."), ECF No. 164. For the reasons below, the motion is GRANTED.

## I. BACKGROUND

### A. Factual and Procedural Background

Plaintiffs are current or former Consumer Response Specialists employed by defendant CFPB, a United States executive agency that regulates consumer financial products and services. *See* Am. Compl. ¶¶ 6–8, ECF No. 8. Heynard Paz-Chow, a man of Asian and Hispanic descent, worked for three years in the CFPB's Consumer Response Division. *Id.* ¶ 7. Carzanna Jones, an African American woman, has been employed by the CFPB's Consumer Response Division for six years and remains currently employed there. *Id.* ¶ 8.

Paz-Chow and Jones took similar, but separate, routes to this Court. In 2014, each initiated Equal Employment Opportunity ("EEO") counseling with the CFPB's Office of Civil Rights ("OCR") to address their allegations of discrimination and retaliation. *Id.* ¶¶ 39, 47–48. Unsatisfied by the counseling process, they each filed, through counsel, a putative class EEO administrative complaint with the CFPB's OCR, alleging discrimination and retaliation on behalf of themselves and all others similarly situated. After multiple rounds of briefing spanning years, the CFPB denied class certification in both their cases, and the Equal Employment Opportunity Commission denied each of their timely appeals in 2018. *See* Pls.' Mot. at 2–3.

On September 13, 2018, Paz-Chow and Jones filed this putative class action against the CFPB and John Michael Mulvaney, in his official capacity as Director of the CFPB.[1] As amended, the complaint alleged that the CFPB engages in a pattern and practice of race and gender discrimination and maintains policies and practices that disparately impact Black, African American, and/or Hispanic Consumer Response Specialists, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Equal Pay Act, 29 U.S.C. § 206(d), and the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Rohit Chopra, as the current director of the CFPB, has been substituted as a party.

Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*  *See* Am. Compl. ¶ 3.  It further alleged that the CFPB: (1) excludes minorities and women from training opportunities, projects, and other assignments that are regularly offered to white or male employees; (2) employs performance evaluation policies that result in lower performance ratings on average for minorities and women; (3) adopts a system to measure employee productivity that disadvantages minorities and women; (4) fails to fairly consider minorities and women for promotions, title changes, and conversion to permanent employee status; (5) pays minorities and women lower wages and denies them equal opportunity to increase their wages; and (6) retaliates against minorities and women who complain of discrimination.  *Id.* ¶ 10.

In May 2019, at the parties' joint request, this matter was stayed pending referral to the United States District Court Mediation Program.  *See* Min. Order (May 10, 2019).  The stay lifted in January 2020, when the parties' negotiations reached a standstill.  *See* Min. Order (Jan. 27, 2020).  For the next year and a half, the parties engaged in extensive and contested fact discovery, which included the production of hundreds of thousands of pages of documents, interrogatories, and human resources and compensation data, the taking of numerous depositions, the retention of experts in labor economics and statistics, and the creation of several expert reports.

In February 2022, the parties again jointly requested a stay of the case pending mediation, which was granted.  *See* Joint Mot. to Stay Pending Mediation, ECF No. 142; Min. Order (Feb. 4, 2022).  The parties engaged in mediation for over a year.  These discussions resulted in the Settlement Agreement for which the parties now seek judicial approval.

**B. Proposed Settlement Agreement**

On August 31, 2023, plaintiffs filed an Unopposed Motion for Provisional Class Certification, Preliminary Approval of Class Action Settlement, and Approval/Distribution of Notice to Class of Settlement. *See* Pls.' Mot. The pertinent terms of the Settlement Agreement are summarized below.

i. Putative Class

For the purposes of the Settlement Agreement, the putative class consists of:

> Black, African American, and/or Hispanic employees of the Bureau who, at any time, between February 13, 2011 and April 19, 2022, served in non-supervisory positions that were assigned to the Bureau's Office of Consumer Response, that were in pay bands identified by the Bureau as 4, 4A, 4B, 40, 41, 5, 5A, 5B, 5C, 51, 52, 53, 6, 6A, or 60 and that were classified by the Bureau as falling within occupational job series code 0301 (except that service in any of the following positions does not make an individual eligible to be a member of the class: Consumer Response Implementation Manager (associated with position description number 110090), Consumer Response Manager (Quality Control) (associated with position description number 111410), Policy Analyst (associated with position description number 110210), or Consumer Response Analyst (associated with position description number 110770)).

Settlement Agreement § III.D.1, ECF No. 164-1.

ii. Monetary & Injunctive Relief

The Settlement Agreement includes both injunctive and monetary relief. Defendants have agreed to make programmatic changes over a three-year period, including providing information on the CFPB's intranet and administering annual employment training that addresses the policies and procedures related to pursuing claims of workplace discrimination. *Id.* § VII.B–C.[2]

[2] Named plaintiffs helped establish the National Treasury Employees Union ("NTEU") at the CFPB. Current CFPB employees holding the positions that would qualify them for membership in the settlement class are part of the bargaining unit represented by the NTEU. *See* Settlement Agreement § VII.A. While this lawsuit was pending, the CFPB and NTEU engaged in negotiations regarding compensation reform, resulting, in December 2022, in a negotiated agreement that reformed the CFPB's pay system. The parties agree that this agreement

Under the Settlement Agreement, defendants would pay a gross settlement of $6,000,000 to settle the pending action and fully resolve plaintiffs' claims ("Settlement Fund"). *Id.* § VIII.A.1. This gross amount would go towards (1) settlement checks to class members, (2) attorneys' fees and costs, (3) service awards to named plaintiffs, (4) any costs associated with settlement administration, and (5) an employer's share of taxes for awards that are reportable on an IRS Form W-2. *Id.* § VIII.A.2(a)–(e).

The $6,000,000 Settlement Fund would be distributed to class members as follows: All class members would receive a Time in Pay Band Award, calculated based on the length of time that an individual qualified for class membership and was in each pay band encompassed by the class definition. *Id.* § VIII.C.2. A class member may also submit a claim to receive a Discretionary Award, which is intended to compensate class members for other alleged losses, such as emotional distress or reduced post-CFPB income. *Id.* § VIII.C.3; *see also id.* § VIII.C.5.a (listing factors for neutral individual to consider when evaluating discretionary award). The Settlement Agreement provides that no individual class member may receive a Time in Pay Band Award and Discretionary Award that totals more than $300,000. *Id.* § VII.C.5.b. In return for these payments, the class members who do not timely opt out of the Settlement Agreement would release all claims of race discrimination, harassment, or retaliation arising from the facts and circumstances that led to this action. *See id.* § V.A; *see also id.* § III.A.32 (defining released claims).

The Settlement Fund would also be used to cover attorneys' fees and costs and the named plaintiffs' service awards. The Settlement Agreement provides that, subject to court approval,

---

substantially addresses the issues that plaintiffs would have sought to address through programmatic relief. *See id.*; Pls.' Mot. at 7.

class counsel will seek attorneys' fees of 25 percent of the Settlement Fund and $50,000 in service awards for each named plaintiff.  *Id.* §§ IX.A–B; *see also id.* at Ex. C.

## II. DISCUSSION

A district court's "role in reviewing a proposed settlement agreement in a class-action lawsuit follows a 'three-stage process, involving two separate hearings.'"  *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 189 (D.D.C. 2017) (Brown Jackson, J.) (quoting 4 William B. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2014)).  First, the parties present a proposed settlement agreement to the court for preliminary approval.  *Id.* at 190.  Second, if the court preliminarily approves the settlement and conditionally certifies the class, notice is sent to the class describing the terms of the proposed agreement and informing the class members of their rights and options with respect to the agreement.  *Id.*; *see also* Fed. R. Civ. P. 23(e)(1).  Finally, the court holds a hearing and may give final approval to a settlement agreement "only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993) ("Rule 23(e) . . . requires court approval of class action settlements and prior notice to all members of the class.").  This lawsuit is at the initial preliminary approval stage, and plaintiffs seek both provisional certification of the class for settlement purposes and preliminary approval of the proposed settlement agreement.

Preliminary approval of a class action settlement "lies within the sound discretion of the court," *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 106 (D.D.C. 2013) (quoting *In re Vitamins Antitrust Litig.*, No. 99-cv-197, 1999 WL 1335318, at *5 (D.D.C. Nov. 23, 1999)), upon determination that the proposed settlement is "fair, adequate, and reasonable and is not the product of collusion between the parties," *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000); *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 23 (D.D.C. 2011)

(considering whether proposed settlement "appears to fall within the range of possible approval and does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys" (citation omitted)). *See Cobell v. Salazar*, 679 F.3d 909, 913 (D.C. Cir. 2012) (applying an abuse of discretion standard to reviewing the district court's decision to approve "the terms of the settlement as fair, reasonable, and adequate"). When, as here, however, the parties seek settlement-only class certification and preliminary approval of a proposed settlement at the same time, the proposed settlement requires even "closer judicial scrutiny" than settlements that are reached after class certification. *Trombley*, 759 F. Supp. 2d at 23 (citation omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (explaining that "a request for settlement-only class certification" is entitled "undiluted, even heightened, attention").

**A. Provisional Class Certification**

Parties seeking class certification, even for only settlement purposes, must demonstrate that they meet the Rule 23(a) prerequisites and fall within one of the Rule 23(b) categories. *See Amchem Prods.*, 521 U.S. at 613–14. Plaintiffs here seek to certify a class of:

> Black, African American, and/or Hispanic employees of the Bureau who, at any time, between February 13, 2011 and April 19, 2022, served in non-supervisory positions that were assigned to the Bureau's Office of Consumer Response, that were in pay bands identified by the Bureau as 4, 4A, 4B, 40, 41, 5, 5A, 5B, 5C, 51, 52, 53, 6, 6A, or 60 and that were classified by the Bureau as falling within occupational job series code 0301 [with certain specifically delineated exceptions].

Defendants do not oppose plaintiffs' motion. Nevertheless, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). For the purposes of evaluating class certification,

the allegations in the complaint are presumed to be true. *See Moore v. Napolitano*, 926 F. Supp. 2d 8, 27 (D.D.C. 2013).

        1.      Rule 23(a)

Rule 23(a) establishes "threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interest of the class)." *Amchem Prods.*, 521 U.S. at 613 (internal marks omitted and alterations in original adopted); *see also In re White*, 64 F.4th 302, 313 (D.C. Cir. 2023). All four requirements are satisfied here.

Rule 23(a)(1) is satisfied when joinder is impracticable, which means "only that it is difficult or inconvenient to join all class members, not that it is impossible to do so." *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (citation omitted). While no bright line rules dictate when joinder is impracticable, "[a]bsent unique circumstances, 'numerosity is satisfied when a proposed class has at least forty members.'" *Id.* (quoting *Richardson*, 991 F. Supp. 2d at 196). The proposed class in this case consists of eighty-five members. The numerosity requirement is thus satisfied.

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. The pivotal inquiry is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (citation omitted). The standard is not demanding, as "even a single common question" will do. *Id.* at 359 (citation omitted and alterations in original adopted). Where plaintiffs allege "widespread wrongdoing by a defendant" and "a uniform policy or practice" affects all class members, the commonality

requirement is more likely to be met. *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014) (citation omitted); *see also Wal-Mart*, 564 U.S. at 352 & n.7. Here, plaintiffs allege that the CFPB engaged in a pattern of discrimination on the basis of race and adopted non-discretionary CFPB-wide practices, such as policies governing performance evaluations, promotions, and pay, that disproportionately harmed Black, African American, and/or Hispanic Consumer Response Specialists. Determination of the truth or falsity of this allegation will "resolve an issue that is central to the validity" of each plaintiff's claim "in one stroke," thereby satisfying the commonality requirement. *In re District of Columbia*, 792 F.3d 96, 99 (D.C. Cir. 2015) (quoting *Wal-Mart*, 564 U.S. at 350).

Under Rule 23(a)(3), the representative parties' claims or defenses must be typical of the claims or defenses of the class. "[T]ypicality concerns the relationship between the representative's individual claims and the class's claims rather than the relatedness of the entire class's claims" and is satisfied "if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (citation omitted). Here, the class members' claims are based on the same legal theory—that the defendants systemically discriminated against Black, African American, and/or Hispanic CFPB employees in certain specifically delineated jobs within the CFPB's Office of Consumer Response. Like the rest of the putative class members, Paz-Chow, a Hispanic man, and Jones, a Black woman, were CFPB employees at some time between February 13, 2011, and April 19, 2022, served in non-supervisory positions at the CFPB's Office of Consumer Response, and were subject to the CFPB's alleged non-discretionary discriminatory practices and policies. Put differently, Paz-Chow and Jones allegedly suffered the same harms as a result of the same

policies and practices as the rest of the class members, thereby making them typical members of the class.

Finally, two criteria are employed to evaluate whether Rule 23(a)(4)'s requirement that named plaintiffs fairly and adequately protect the interests of the class, is satisfied: "(1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (citation omitted); *see also J.D.*, 925 F.3d at 1312. Paz-Chow and Jones, who pursued both monetary damages and injunctive relief, have no apparent conflicting interests with unnamed members of the class. In fact, every indication suggests that Paz-Chow and Jones have vigorously protected the interests of the class. Defendants do not dispute that named plaintiffs retained experienced counsel, have devoted considerable time to meeting with counsel, and have participated in negotiating this Settlement Agreement, which benefits all class members and sets a $300,000 maximum monetary award for any class member, including the named plaintiffs. *See* Pls.' Mot. at 9. The adequacy of representation requirement is thus satisfied.

2. <u>Rule 23(b)</u>

In addition to satisfying the four Rule 23(a) requirements, plaintiffs seeking provisional class certification must meet the requirements of one of Rule 23(b)'s subsections. *Amchem Prods.*, 521 U.S. at 614. Here, plaintiffs seek certification under both Rules 23(b)(2) and (b)(3), presumably relying on Rule 23(b)(2) for purposes of their requested injunctive relief and Rule 23(b)(3) for monetary relief.

        *a) Rule 23(b)(2)*

Rule 23(b)(2) provides that a class action "may be maintained" if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (citation omitted). Put differently, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

Here, plaintiffs sought, among other things, declarations that "the CFPB's acts, conduct, policies, and practices are unlawful," and that the "CFPB engages in a pattern and practice of racial discrimination against racial minorities and women, and employs practices and practices that have an unlawful disparate impact on racial minorities," plus an "[o]rder that the CFPB stop discriminating and retaliating against racial minorities and women, and cease implementing policies and practices that have a disparate impact on racial minorities and women." Am. Compl. (Prayer for Relief). Even if particular elements of the relief plaintiffs seek exceeds the relief the Court would order if the parties were to litigate the merits and plaintiffs were to prevail, for purposes of Rule 23(b)(2), the allegations in plaintiffs' complaint, which, as already noted, are presumed to be true at this stage of the provisional class certification inquiry, are sufficient to satisfy Rule 23(b)(2). This conclusion is further informed by the proposed Settlement Agreement, which includes defendants' agreement to make programmatic changes, such as providing certain information on the CFPB's intranet and administering annual employment

training related to pursuing claims of workplace discrimination. These programmatic changes would apply generally to and benefit the entire putative class.

*b) Rule 23(b)(3)*

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both prongs are satisfied here.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The inquiry turns on "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (citations omitted and alteration in original adopted).

For the purposes of preliminary settlement approval, plaintiffs have established that the central question of whether the CFPB engages in a pattern of practice of race discrimination can be answered through common evidence. While individualized damages questions may be present, the central inquiry for all plaintiffs is whether CFPB's employment policies, including those governing training opportunities, performance evaluations, employee productivity, promotions, and pay, are discriminatory. The parties' discovery reinforces that common issues predominate. Plaintiffs' counsel took seven depositions about the CFPB's "policies, practices,

and procedures governing position classification, pay setting, and 'career ladders,'" and about the CFPB's "processes for tracking discrimination and retaliation complaints" and its methods for "stud[ying] any potential disparate impact caused by its compensation policies." Pls.' Mot. at 4. The parties further retained experts to conduct statistical analyses of workforce data, such as compensation data, to determine whether statistically significant racial disparities in compensation existed. *Id.* at 4–5. All members of the class, were they to bring individual lawsuits, would rely on this same evidence to make the same claim: that the CFPB, between February 2011 and April 2022, adopted employment practices and policies that discriminated against Black, African American, and/or Hispanic Consumer Response Specialists.

To establish superiority, a plaintiff must prove that a class action is superior to other available forms of adjudication. The requirement ensures that class action resolution will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Amchem Prods.*, 521 U.S. at 615 (alteration in original adopted). As discussed above, the size of the class and the uniformity of issues regarding the CFPB's liability weighs strongly in favor of finding that class adjudication is superior to other forms of adjudication. A class action will be more efficient than individual actions and will promote uniformity in decisions.

**B. Preliminary Approval of the Settlement**

"There is no single test in this Circuit for determining whether a proposed class action settlement should be approved under Rule 23(e)." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004). Courts have considered the following factors: "(a) whether the settlement is the result of arm's length negotiations; (b) the terms of the settlement in relation to

the strength of plaintiffs' case; (c) the status of the litigation at the time of settlement; (d) the reaction of the class; and, (e) the opinion of experienced counsel." *Id.* at 104. For the reasons set forth below, the proposed Settlement Agreement passes preliminary review.

i. Arm's Length Negotiations

The process culminating in the proposed agreement poses no concern here. Plaintiffs filed this action five years ago. Since then, the parties, both represented by capable counsel, engaged in mediation in good faith. When negotiations stalled, they engaged in extensive and significant fact discovery. Armed with the fruits of discovery, the parties again agreed to mediation. After over a year of negotiating and with the help of an experienced and competent mediator, the parties reached the proposed Settlement Agreement presented to the Court. In light of this extended and thorough process, the Court finds that the proposed Settlement Agreement is "the product of serious, informed, non-collusive negotiations." *Richardson*, 951 F. Supp. 2d at 106–07 (quoting *In re Vitamins Antitrust Litig.*, 1999 WL 1335318, at *5).

ii. Terms of the Settlement

Turning to its terms, the Settlement Agreement falls within the range of possible approval and has no obvious deficiencies. Those terms offer extensive programmatic and monetary relief that address plaintiffs' allegations. The Time in Pay Band Award, which addresses alleged wage disparity, guarantees all class members some relief, computed based on the length of time the individual qualified for class membership and their pay band. The Discretionary Award, in turn, offers flexibility for class members to receive more personalized relief after assessment of their individual claims, including consideration of alleged post-employment wage loss, reputational damage, and emotional distress. No individual class member, including named plaintiffs, may

receive more than $300,000 in Time in Pay Band and Discretionary Awards, ensuring that no class member will be paid a disproportionate amount of the Settlement Fund.

The proposed $50,000 service award to be distributed to each named plaintiff, though high, appears reasonable, pending the fairness hearing and final settlement approval. *See Thomas v. Albright*, 139 F.3d 227, 229 (D.C. Cir. 1998) (approving $125,000 total in service awards). In addition, the proposed maximum award of 25 percent of the Settlement Fund for attorneys' fees is not outside the range of possible approval. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1263 (D.C. Cir. 1993) (explaining that "the proper measure" of "contingent counsel fees in class actions resulting in the creation of a common fund payable to plaintiffs" is the "percentage of the fund" method); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 6 (D.D.C. 2008) (providing that these percentages "may range from fifteen to forty-five percent").

iii. Status of the Litigation at Settlement

Both parties recognize the substantial risks and costs of proceeding with this litigation, where the appropriateness of class certification, the question of liability, and the amount of damages would be contested. *See* Pls.' Mot. at 13. While the proposed Settlement Agreement was reached before class certification, this timing "do[es] not come too early to be suspicious." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 105. As discussed above, the proposed Settlement Agreement is the result of years of litigation, first before an administrative body then before this Court and two mediators. The parties have engaged in prolonged motions practice and extensive discovery, both formal and informal. Plaintiffs received CFPB employee data and personnel records; class counsel took seven depositions regarding the CFPB's policies, practices, and procedures; the parties retained experts in labor economics and statistics to conduct

statistical analyses of the workforce data to determine whether the CFPB's practices led to statistically significant racial disparities in compensation. *See* Pls.' Mot. at 4–5. "Particularly at the preliminary-approval stage," as here, "it is enough that the parties represent that formal and informal discovery facilitated a significant investigation of the relevant facts contributing to arms-length settlement negotiation." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 488 (D.D.C. 2019) (quoting *Trombley*, 759 F. Supp. 2d at 26). Absent settlement, the parties would face years of complex and lengthy litigation, including more motions practice, a trial, and a likely appeal, with no guarantee of success for either side.

iv. Reaction of Class to Settlement

Since notice has not been sent to the putative class, reactions of the class to the proposed settlement cannot be assessed. The Court will thus scrutinize this factor more closely at the final approval stage.

v. Opinion of Experienced Class Counsel

The opinion of experienced class counsel is "afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Id.* at 488–89 (quoting *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007)). Counsel in this case are experienced class action litigators. *See* Pls.' Mot. at 9–10 (cataloguing experience). They maintain that "the Settlement is adequate, fair, and reasonable and meets the best interests of [the] class." *Id.* at 1. The parties describe their support for the proposed settlement as "unconditional[]." *Id.* at 15 n.4. "Although the Court will not defer blindly to the views of counsel with regard to the adequacy of a settlement, it must consider that the [settlement was] reached after several [years] of arms' length negotiation by experienced counsel and that both counsel and all parties involved view the settlement[] as reasonable." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 106.

**C. Notice and Further Proceedings**

Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Any notice "must be reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Stephens*, 329 F.R.D. at 490 (quoting *Brown v. Wells Fargo Bank, N.A.*, 869 F. Supp. 2d 51, 64 (D.D.C. 2012)) (alteration in original); *see also Devlin v. Scardelletti*, 536 U.S. 1, 8–9 (2002) (explaining that Rule 23(e) requires notice of a proposed settlement agreement to all class members and entitles all class members an opportunity to object).

The Court finds that the proposed notice for the class members ("Notice") is sufficient. *See* Settlement Agreement at Ex. C. The first page of the Notice summarizes a class member's legal rights and the following options: do nothing; opt out; or comment/object. The Notice then provides background information about the lawsuit and explains in detail the terms of the Settlement Agreement; the recipient's options; the steps the recipient must take to opt out of the settlement; and how the recipient can comment on or raise an objection to the settlement and participate in the final fairness hearing. *See id.* The Notice states the consequences of remaining in the class, such as the release of certain discrimination claims; explains how an individual's settlement award will be calculated; and discloses that class counsel intends to seek 25 percent of the Settlement Fund in attorneys' fees and $50,000 for each named plaintiff. *Id.* The Notice is clear, thorough, and provides sufficient opportunity for class members to respond.

Pursuant to the proposed Settlement Agreement, defendants have agreed, within three business days of this Agreement's preliminary approval, to identify all class members and provide the Claims Administrator the name, date of birth, and last known address of each class member, based on information available in the CFPB's human resources database. *See id.* § IV.C.4. The Claims Administrator will then run the list of class members through the United States Postal Service's National Change of Address database. *Id.* § IV.C.7. Within ten days of receiving class member information from the CFPB, the Claims Administrator will mail notice of the settlement to each class member. *Id.* § IV.C.5. Putative class members will have forty-five days from the date the Notice is mailed to opt out of the class or object to the Settlement Agreement. *Id.* §§ IV.D.1, IV.E.1.

The Court finds that the parties' proposed notice attached as Exhibit C to the Settlement Agreement and attached hereto as Exhibit 1, and the procedures contemplated in Section IV.C of the Settlement Agreement meet the standard required by Rule 23(e)(1).

## III. CONCLUSION AND ORDER

For the above reasons, plaintiffs' motion, ECF No. 164, is GRANTED. Accordingly, it is hereby:

**ORDERED** that the class defined at Section III.D of the Settlement Agreement, ECF No. 164-1, is provisionally certified for settlement purposes; it is further

**ORDERED** that the Settlement Agreement, ECF No. 164-1, is preliminarily approved; it is further

**ORDERED** that Heynard L. Paz-Chow and Carzanna Jones are approved as Class Representatives, and that Linda D. Friedman, George S. Robot, Truscenialyn Brooks, and Caitlin

M. Kearney of Stowell & Friedman, Ltd., and Justin L. Leinenweber of Justin Leinenweber, P.C. are approved as Class Counsel; it is further

**ORDERED** that the proposed form and content of the Notice, attached as Exhibit C to the Settlement Agreement, ECF No. 164-1, and hereto as Exhibit 1, and the manner of distributing the Notice, as set out in Section IV.C of the Settlement Agreement, are approved; it is further

**ORDERED** that the Court approves the retention by the parties of Atticus Claims Administration, LLC as the Claims Administrator, and Lynn Cohn as Special Master; it is further

**ORDERED** that, promptly following the entry of this Order, the Claims Administrator shall prepare final versions of the Notice attached hereto as Exhibit 1; that, no later than three (3) business days after the date of this Order, the CFPB shall provide the Claims Administrator the names, dates of birth, and last known address of the class members in electronic format; that, no later than ten (10) business days after receiving this information, the Claims Administrator will mail Notice to the last known address or updated address, as appropriate, of each class member by first-class mail, postage prepaid; and that the Claims Administrator shall take all other actions in furtherance of claims administration as specified in the Settlement Agreement; it is further

**ORDERED** that class members shall be bound by all determinations, orders, and judgments in this action, whether favorable or unfavorable, unless such persons and entities request exclusion from the class in a timely and proper manner, as herein provided.  A class member wishing to make such a request shall mail a written, signed statement to the Claims Administrator at the address set forth in the Notice on or before forty-five (45) days after the Notice was mailed to the class members; it is further

**ORDERED** that class members must file any comments or objections to the Settlement Agreement no later than forty-five (45) days after Notice is mailed, and that any class member who retains separate counsel to represent him or her by appearing in these proceedings must have such counsel enter an appearance pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure no later than forty-five (45) days after Notice is mailed; it is further

**ORDERED** that within fifteen (15) business days following the expiration of the exclusion deadline, Class Counsel shall file with the Court proof of mailing of the Notice and an affidavit setting forth a list of all persons and entities who have validly and timely requested exclusion from the Class; it is further

**ORDERED** that a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure will be held before this Court on January 18, 2024, at 9:30 AM; and it is further

**ORDERED** that this Order may be modified by the Court upon motion by either or both parties, for good cause shown.

**SO ORDERED.**

Date: September 15, 2023

                                                  **BERYL A. HOWELL**
                                                  United States District Judge