# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARZANNA JONES and HEYNARD L. PAZ-CHOW, on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br>   v.<br><br>ROHIT CHOPRA, in his official capacity as Director, Consumer Financial Protection Bureau, and CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>             Defendants. | Civil Action No.: 18-2132 (BAH)<br><br>**Judge Beryl A. Howell**<br><br>**Jury Trial Requested** |

**DECLARATION OF CARZANNA JONES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SERVICE AWARDS**

I declare under penalty of perjury that the foregoing is true and correct.

    1.    My name is Carzanna Jones. I am a Named Plaintiff and Class Representative in the above-referenced action and have been actively involved in the investigation, prosecution, and ultimate settlement of this lawsuit against the Consumer Financial Protection Bureau ("CFPB" or "the Bureau") and its director (collectively "Defendants") since August 2014.

    2.    I am honored to serve as a Class Representative for the class in this matter and since 2014, I have spent hundreds of hours working with Class Counsel and my fellow Class Representative to successfully prosecute this matter to a settlement which I believe will benefit all class members and of which I am proud. I have spent considerable time with Class Counsel gathering and providing information regarding the Bureau's policies and practices and the experiences of African American and Hispanic employees. I participated actively throughout discovery and was deposed across two days. I have participated in conference calls and meetings, asked questions, and analyzed information to help develop the case and reach a settlement. I

prepared for and attended mediation sessions in this case, including a mediation session in person in Washington, D.C., and two remote mediation sessions. I had to use annual leave days to attend meetings and mediations. I am proud to have worked with my fellow Class Representative, Class Counsel, and with the Bureau to reach a settlement for the class that will result in lasting benefits to all.

Personal and Professional Background

3. I have been a public servant almost my entire professional career. I was a member of the United States Army from 2003 through my honorable discharge in 2006. During and after my time in the Army, I worked as a paralegal, first for the Army and then for the Department of Defense. At the Department of Defense, I reviewed documents and conducted interviews to investigate consumer complaints relating to credit cards, loans, mortgages, and other financial disputes, among other tasks. In September 2012, I began working as a Consumer Response Specialist at the Bureau's Office of Consumer Response.

My Experience at the Bureau

4. At first, I was thrilled to work at the Bureau as I believed deeply in its mission and worked diligently to make a contribution to its important work. While at the Bureau, my duties included investigating consumers' mortgage complaints to determine if any regulations had been violated. I helped to track various financial institutions to see if any patterns of violations or trends were apparent.

5. Throughout my time at the Bureau, I believe I was discriminated against based on my race and subjected to a racially hostile environment. For example, I received performance ratings that did not accurately reflect my performance. I was also improperly denied promotions for which I was well qualified and pay increases warranted by my hard and successful work.

6. I was also denied development and advancement opportunities. The Bureau provided details and special project assignments to largely non-minority employees in the Office of Consumer Response, which I observed allowed these employees to develop experience that assisted them in advancing their careers. I requested but was denied special projects or detail assignments. Similarly, the Bureau permitted some Consumer Response employees to attend trainings. I was passed over for trainings, and I observed that the vast majority of employees offered training were white.

7. During my tenure at the Bureau I became one of the first stewards of the Bureau's union. In this role, I counseled my colleagues about their complaints, assisted them with filing grievances, and served on committees to review new Bureau policies prior to their rollout.

8. I believe I was also discriminated against on the basis of my disability. For example, I took Family and Medical Leave ("FMLA") leave due to my disability, which included suffering crippling migraines. My managers knew about my disability, but I believe they used my absence as an excuse to deny me the opportunity to move to a different assignment. While on leave, my manager emailed my CFPB email account informing me that my leave was ending. However, I did not have access to this email account during my leave. It was not until my manager forwarded these emails to my personal email account did I learn that the Bureau considered me AWOL instead of on approved leave.

My Role in the Litigation

9. On or about August 19, 2014, I began EEO counseling with the Bureau's Office of Civil Rights. In or around September 2014, I reached out to Class Counsel to ensure that the discrimination that happened to me did not happen to any other African American or Hispanic employees. I am proud to represent a class of African American and Hispanic employees within

the Bureau's Office of Consumer Response. It has been my honor to work on behalf of Class Members by keeping them informed about the case and making the hard decisions to benefit the entire class. It is a job that I took on willingly and with the full confidence that my personal experience and knowledge would lead to the right outcome for all involved.

10. Class Counsel explained my role and fiduciary duties as a Class Representative to the class as a whole before the lawsuit was filed. I have taken those duties seriously and sought to educate myself and at all times to place others' interests above my own. Class Counsel also spent a considerable amount of time explaining to me the relevant law and the litigation process, including the process of discovery, class certification, summary judgment, trial, and the possibility of appeals, as well as the risk entailed with each step.

11. Since 2014, I have worked with Class Counsel and the other Class Representative to forward this litigation, working long hours through difficult circumstances and some setbacks. Early on, I worked with Class Counsel to help them understand the Bureau, its policies and practices, and how they affect non-white employees in the Office of Consumer Response. Class Counsel, on my behalf, filed an administrative complaint with the Bureau's Office of Civil Rights on November 12, 2014, alleging discrimination and retaliation and systemic discrimination against myself and other similarly situated employees. Working with Class Counsel, I provided a response to the EEOC's Requests for Information regarding class certification, but an Administrative Judge issued an order denying class certification and dismissing the class complaint. I worked with Class Counsel to appeal the dismissal, but the EEOC denied the appeal. I believed deeply in the case and hoped for relief and reform, so I continued to work with Class Counsel to draft the complaint in this federal lawsuit.

12. Since 2014, I have communicated and attended numerous conferences with Class

Counsel about my experiences and the Bureau's policies, and provided Class Counsel with documents regarding various materials including position descriptions, reorganization forms, email communications, production metrics, and explained their significance via email and telephone conversations. I have always made myself available to answer any questions about my experience at the Bureau. I also spoke with many current and former Bureau colleagues about their experiences and this case. While many of my colleagues were upset about how they were treated at the Bureau, many were too fearful of repercussions to file a complaint or lawsuit. Hearing their stories motivated me more to pursue this case.

13. As a Class Representative and Named Plaintiff, I was required to review and aid Class Counsel in drafting answers and producing documents responsive to defendant's written discovery requests, including answers related to my experience at the Bureau. This took a significant amount of time and sometimes many drafts. I also provided access to my personal email accounts, cellular phones, and social media accounts, and assisted with review and production of those materials.

14. In addition to helping Class Counsel prepare and respond to written discovery, I had my deposition taken over two days, first on April 6, 2021, and next on April 13, 2021. The deposition process was lengthy and required substantial time away from my job and my family. I spent numerous days meeting and working with Class Counsel preparing for the depositions, including by reviewing documents that we produced in discovery, as well as those produced by the Bureau.

15. My deposition was very stressful and difficult, as I was required to speak at length about the treatment I faced throughout my career at the Bureau. I had to withstand aggressive questioning which I felt challenged my capabilities as a professional. Sitting for these

depositions triggered the anxiety, anger, and frustration I experienced at the Bureau. It caused me to relive the experience while facing questions that sought to minimize my experience.

16. I also participated in the depositions of all of the Bureau's witnesses by assisting Class Counsel with strategy and preparation for those depositions, and I attended the depositions so that I could provide information and suggestions in real time during the depositions.

My Role in the Settlement Process

17. The negotiations of a potential settlement were long, contentious, and required a lot of work over an extended period of time. Among many other things, I prepared for and attended three long and difficult mediations. The first was in Washington, D.C., in October 2019. I attended two additional virtual mediations in April and November 2022. The mediations and negotiations process were stressful and time consuming. Prior to and after every mediation session I had meetings and/or conference calls with Class Counsel and the other Class Representative. During these meetings and calls, we discussed programmatic relief and reviewed statistical analyses of the Bureau's workforce and compensation data, including the expert reports, which informed our negotiation positions. I learned more about the statistical analyses and outcomes and provided feedback and suggestions for how we should collectively present our theory of the case to the Bureau. I worked hard to make sure that every decision made was for the benefit of the Class.

18. During the first mediation in Washington, D.C., I spoke directly to the Bureau's representatives and told them about the impact of my work experience at the Bureau had on me and my family. I also explained the impact the working conditions had on other Black and Hispanic Bureau employees. I recall saying how difficult it was to work at the Bureau while knowing that I was not being treated fairly. And I remember explaining that I could not

recommend to any person of color that they come work at the Bureau because I knew they would not be treated fairly either. I came to the Bureau because I believed in its mission, and it hurt me deeply to be unable to recommend to others that they come and work with me. I explained my work experiences and what I had observed with the hope that the Bureau would understand and work with me for change. Sharing this information felt intimidating because I was and am a current employee who needed my job. This was an extremely emotional meeting, and I recall being overcome with emotions several times during that day, in the days leading up to it, and in its aftermath.

19.     The negotiation process was extremely hard fought and protracted. Throughout the negotiation process and to this day, I understood and understand that neither the fact nor the amount of any service award is guaranteed. I am proud of the settlement we reached and truly believe it is in the best interest of all class members.

<u>The Effects of My Participation as a Class Representative</u>

20.     While I know that I made the right choice to bring this lawsuit, it has come at a great cost to me personally. This experience has caused me irreversible trauma and damage. Working at the Bureau while pursuing this lawsuit has been incredibly difficult. I had to go to work every day knowing that others within the Bureau considered me to be a troublemaker and thought that I was trying to sabotage the Bureau's mission. I had someone tell me to just "be quiet and get your money." But this has never been about money. This has been about standing up for what I know to be true and right, and speaking on behalf of others who were either unable or unwilling to speak out in spite of their personal well-being.

21.     My work on this case as a Class Representative has impacted my personal and professional life. Over the past ten years I have sacrificed time with my family and used personal

days to work on this case. In addition, meetings with the other Class Representative and other Bureau employees have filled up many nights and weekends.

22. I am fearful of experiencing additional retaliation because of being a Class Representative in this case. My name will forever be associated with this lawsuit by virtue of the Internet. Any future employer or potential client can perform an internet search of "Carzanna Jones," or search lawsuits on PACER, the electronic litigation filing database, and see that I was a Named Plaintiff and Class Representative in a class race discrimination lawsuit against the Bureau.

23. Moreover, my participation in this lawsuit has affected my, and my family's, physical and mental well-being. While working on this case, I was constantly reminded of my feelings of sadness and anger about the Bureau's culture. Further, going through the process made me relive the long hours put into trying to succeed at the Bureau.

24. Finally, I was committed to the class for almost ten years even though I believe that I could have resolved my individual claims against the Bureau either through settlement or judgment much sooner. I remained committed to the class because I felt it was important to push for change and relief for my African American and Hispanic peers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 2, 2023

*Carzanna Jones*
Carzanna Jones