## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARZANNA JONES and HEYNARD L. PAZ-CHOW, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> ROHIT CHOPRA, in his official capacity as Director, Consumer Financial Protection Bureau, and CONSUMER FINANCIAL PROTECTION BUREAU, <br><br> Defendants. | Civil Action No.: 18-2132 (BAH) <br><br> **Judge Beryl A. Howell** <br><br> **Jury Trial Requested** |

## PLAINTIFFS' UNOPPOSED MOTION FOR CLASS CERTIFICATION AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT

George S. Robot
Linda D. Friedman (pro hac vice)
Truscenialyn Brooks (pro hac vice)
Caitlin M. Kearney (pro hac vice)
STOWELL & FRIEDMAN, LTD.
303 W. Madison St., Suite 2600
Chicago, IL 60606
Telephone: (312) 431-0888
lfriedman@sfltd.com
grobot@sfltd.com

Justin L. Leinenweber (pro hac vice)
Justin L. Leinenweber, P.C.
120 N LaSalle St Ste 2000,
Chicago, IL 60618
Telephone: (312) 857-3405
justin@ilesq.com

*Attorneys for Plaintiffs, on behalf of themselves and all others similarly situated*

December 6, 2023

## TABLE OF CONTENTS

**FACTUAL BACKGROUND AND SUMMARY OF SETTLEMENT TERMS**.....................2

I.    The Litigation......................................................................................................2

II.   Summary of the Settlement Terms ...................................................................5

   A.   The Settlement Fund and Claims Resolution Process....................................5

   B.   Programmatic Relief .....................................................................................6

III.  The Class Response to the Settlement Has Been Overwhelmingly Positive.....................7

**ARGUMENT**....................................................................................................................7

I.    The Notice Provided to the Class Satisfies Due Process ...................................7

II.   The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved.....................8

   A.   Class Representatives and Class Counsel Have Adequately Represented the Class..........9

   B.   The Settlement Was Vigorously Negotiated at Arm's Length .......................10

   C.   The Relief Provided for the Class Is More Than Adequate............................11

   D.   The Claims Resolution Process Treats Class Members Equitably .................18

III.  The Settlement Class Meets Rule 23 and Should Be Certified .......................18

   A.   The Class Meets All Requirements of Rule 23(a).........................................19

   B.   The Class Meets the Requirements of Rule 23(b)(2) and 23(b)(3)...............21

**CONCLUSION** ...............................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152 (D.D.C. 2014)................... 10, 15, 17, 18

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................. 21

*Chi. Tchrs. Union v. Bd. of Educ. of City of Chi.*, 797 F.3d 426 (7th Cir. 2015) ........................ 21

*Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2007)..................................................... 17

*Cook v. Billington*, No. 82-cv-0400, 1988 WL 142376 (D.D.C. Dec. 13, 1988) ........................ 20

*Creighton v. Metropolitan Life Ins.*, 15-cv-08321 (S.D.N.Y. 2017) ........................................ 14

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)...................................................... 20

*Howard v. Liquidity Servs. Inc.*, No. 14-cv-1183, 2018 WL 4853898 ........................9, 13, 17, 18

*Hubbard v. Donahoe*, 958 F. Supp. 2d 116 (D.D.C. 2013)................................................... 15

*In re APA Assessment Fee Litig.*, 311 F.R.D. 8 (D.D.C. 2015).............................................. 21

*In re District of Columbia*, 792 F.3d 96 (D.C. Cir. 2015) .................................................... 20

*In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64 (D.D.C. 2018) ................... 7, 8

*In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-276, 2003 WL 22037741 (D.D.C. June 16, 2003) ....................................................................................................................... 13

*In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100 (D.D.C. 2004)...................................... 11, 17

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) .......................................... 16

*Kosen v. Am. Express Fin. Advisors, Inc.*, No. 02-cv-0082 (D.D.C. June 16, 2002) ................... 14

*Little v. Washington Metro. Area Transit Auth.*, 313 F. Supp. 3d 27 (D.D.C. 2018)............. 11, 15

*McReynolds v. Merrill Lynch*, 05-cv-6583 (N.D. Ill. 2014) ................................................... 14

*Meyer v. Panera Bread Co.*, No. 17-cv-2565, 2019 WL 11271381 (D.D.C. Mar. 6, 2019)........ 14

*Meyer v. Panera, LLC*, No. 17-cv-2565, 2019 WL 11271378 (D.D.C. Mar. 29, 2019) ............. 14

*Moore v. Napolitano*, 926 F. Supp. 2d 8 (D.D.C. 2013)..................................................... 21

*Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298 (D.D.C. 1996)............................................... 9

*Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37 (D.D.C. 2010).......................................... 15

*Rogers v. Lumina Solar, Inc.*, No. 18-cv-2128, 2020 WL 3402360 (D.D.C. June 19, 2020)   9, 18

*Slaughter v. Wells Fargo Advisors, LLC*, 13-cv-6368, (N.D. Il. 2017)........................................ 14

*Stephens v. Farmers Rest. Grp.,* No. 17-cv-1087, 2019 WL 2550674 ....................................... 11

*Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33 (D.D.C. 2007) .................................... 19, 20

*Thorpe v. District of Columbia*, 303 F.R.D. 120 (D.D.C. 2014) ........................................... 20

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ................................. 15

*Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349 (D.D.C. 2007).................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ..................................... 7


**Statutes**

28 U.S.C. § 1715(d) .............................................................................................................. 8

42 U.S.C. § 2000e .............................................................................................................. 2


**Rules**

Fed. R. Civ. P. 23 ..........................................................................................................13, 18

Fed. R. Civ. P. 23(a)..........................................................................................................  19

Fed. R. Civ. P. 23(b)(2).......................................................................................................... 21

Fed. R. Civ. P. 23(b)(3)........................................................................................................ 21

Fed. R. Civ. P. 23(e)(1).......................................................................................................... 7

**TABLE OF AUTHORITIES**
**(con't)**

<u>**Page**</u>

Fed. R. Civ. P. 23(e)(2)...........................................................................................................9, 11

Fed. R. Civ. P. 23(e)(2)(C) ..........................................................................................................11

Fed. R. Civ. P. 23(e)(3)..................................................................................................................11

Plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Stowell & Friedman, Ltd., and Justin L. Leinenweber, P.C., respectfully submit their class settlement (the "Settlement," Dkt. 164-1) between the proposed class and Defendants the Consumer Financial Protection Bureau ("CFPB" or the "Bureau") and its Director, Rohit Chopra (in his official capacity), for approval by the Court.

On September 15, 2023, the Court preliminarily approved the Settlement and provisionally certified the class, finding in a thorough opinion that the proposed Settlement and class sufficiently satisfied the Rule 23(e) requirements for approval and the Rule 23(a), (b)(2), and (b)(3) requirements for certification. (Dkt. 168, 7–16.) Since this approval, there has been a successful notice campaign and the response of the class has been overwhelmingly positive— **zero** class members objected to or opted out of the Settlement. The class's positive reaction offers further evidence that Class Counsel[1] and the Class Representatives reached an exceptional result for the Class Members, which they are proud to recommend to the Court. The Settlement's $6 million Settlement Fund for an 85-member class is substantial in view of the risks of continued litigation and by comparison to similar settlements. In fact, the per capita award of over $70,000 is higher than the per capita awards in the largest employment discrimination class or collective action settlements in 2021 or 2022.

This Settlement is the product of nearly a decade of litigation, including extensive discovery and exhaustive negotiations overseen by independent mediators. The parties hotly contested discovery motions, exchanged over 100,000 documents and troves of Bureau employment data, took nine Rule 30(b)(6) and fact witness depositions, and hired experts to analyze Bureau compensation data. With the expansive information gathered during discovery,

---

[1] This motion incorporates by reference the definitions in the Settlement (Dkt. 164-1) and all capitalized terms not defined herein shall have the same meanings as set forth in the Settlement.

the Class Representatives and Class Counsel engaged a professional mediator to superintend over a year of arm's length mediation.

The Settlement easily satisfies the criteria for approval set forth in Federal Rule of Civil Procedure 23(e)—it is fair, reasonable, and adequate—and for certification under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3). Accordingly, Plaintiffs move the Court for approval of the Settlement and certification of the class.

## FACTUAL BACKGROUND AND SUMMARY OF SETTLEMENT TERMS

### I.    The Litigation

Heynard Paz-Chow ("Paz-Chow"), a Hispanic man, joined the Bureau in 2011, and Carzanna Jones ("Jones"), a Black woman, joined the Bureau in 2012. In 2014, after being passed over for pay and advancement and/or otherwise treated differently based on their race, both initiated Equal Employment Opportunity ("EEO") counseling with the Bureau's Office of Civil Rights seeking help to address their experiences of discrimination and retaliation. Believing their treatment was consistent with firm-wide discrimination, they then retained Class Counsel and filed putative class EEO administrative complaints with the CFPB's Office of Civil Rights, and litigated class certification through appeal at the EEOC, which ultimately denied class certification. (Dkt. 170-1, Declaration of Heynard Paz-Chow (hereinafter "Paz-Chow Decl."), ¶¶ 5–6, 9; Dkt. 170-2, Declaration of Carzanna Jones (hereinafter "Jones Decl."), ¶¶ 5-6, 9).

In September 2018, they filed this putative class action seeking reform and relief for minority Bureau workers on a class-wide basis. In their complaint, they alleged, among other things, that the Bureau violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by subjecting Black/African American and Hispanic Consumer Response Specialists to agency-wide discriminatory and retaliatory policies and practices, including paying them lower

wages than non-minority employees because of their race and/or ethnicity and discriminating in other terms and conditions of their employment. (Dkt. 1.)

At the parties' request, this Court referred the case to mediation. (Minute Order of May 10, 2019.) In order to fully and fairly represent the class and prepare for mediation, Class Counsel sought and received from the Bureau employee data and other personnel records such as performance reviews, resumes, and position descriptions. (Exhibit 1, Declaration of Linda D. Friedman (hereinafter "Friedman Decl."), ¶ 28.) Class Counsel retained an expert to analyze the data to be in the best position to negotiate on behalf of the class. (*Id.*) However, despite the parties' efforts and the assistance of the federal mediator, the parties were unable to reach a resolution of the case without further litigation and discovery. (*Id.*, ¶ 29).

As this Court is aware, over the next year and a half, the parties engaged in substantial fact discovery. With the Court's assistance when necessary, the parties tirelessly negotiated and litigated discovery disputes, including in two conferences with the Court in May and July 2020 and motion practice in July 2020. (*Id.*, ¶ 30.) This Court considered and resolved disputes on topics such as ESI, and it carefully monitored the parties' extensive discovery efforts, which are memorialized in the over 75 status reports filed with the Court between July 31, 2020, and February 4, 2022. (*Id.*; Dkts. 83, 198.) As a result, the record includes expansive discovery, including well over 100,000 documents, and extensive human resources and compensation data, as well as responses to interrogatories on a variety of relevant topics. (Friedman Decl., ¶ 30.) Class Counsel took seven depositions, including of Bureau corporate representatives designated under Federal Rule of Civil Procedure 30(b)(6), regarding the Bureau's policies, practices, and procedures governing position classification, pay setting, and "career ladders," which permitted employees to progress within a position from one pay band to the next without a

competitive process. These depositions also covered the Bureau's processes for tracking discrimination and retaliation complaints, as well as whether and how the Bureau studied any potential disparate impact caused by its compensation policies. In April 2021, the Class Representatives sat for their own lengthy depositions (Jones' deposition occurred in two separate sessions). (*Id.*, ¶ 31.)

The parties retained experts in labor economics and statistics to conduct statistical analyses of the workforce data, and the parties exchanged expert reports. Plaintiffs' expert analyzed compensation data of employees in certain positions and pay bands in the Office of Consumer Response from 2012 to 2020. This analysis included a linear regression to determine whether there were statistically significant racial disparities in compensation after controlling for other variables. Plaintiffs' expert also conducted a longitudinal compensation analysis, studying whether there were statistically significant disparities in pay based on race among the same employees over time. (*Id.*, ¶ 32).

Armed with facts gathered from extensive discovery and with expert analyses of the Bureau's workforce and compensation data, the parties again agreed to engage in settlement discussions and mediation. The parties engaged Martin F. Scheinman, Esq., a highly experienced professional mediator, skilled in mediation of complex class actions and employment discrimination litigation. Negotiations were hard-fought, but some progress was made. After the first mediation session, the parties agreed on certain terms but reached an impasse as to how to distribute the Settlement Fund. Additional discussions and another session with Mr. Scheinman resolved some important issues. In the months that followed, Class Counsel and Defendants continued to negotiate their principled positions on how best to distribute the Settlement Fund, as well as other terms of the Settlement. (*Id*., ¶ 34.)

The formal mediation sessions and follow-up discussions between the parties ultimately resulted in the Settlement. During the negotiations, counsel bargained vigorously on behalf of their clients. Due to the extensive discovery and expert reports, both sides were familiar with the strengths and weaknesses of their positions. All negotiations were conducted at arm's length and in good faith. Class Representatives lent unique insight and expertise throughout the case and in every aspect of the negotiations and settlement process, ensuring both they and Class Counsel were fully informed and serving the best interests of the class. Class Representatives attended mediation sessions; were fully informed of the facts, law, and their expert's data analyses and findings; and had lengthy information sharing and strategy meetings with Class Counsel before and after mediation sessions. (*Id.*, ¶¶ 34, 52–53.)

## II.    Summary of the Settlement Terms

The proposed Settlement reached by the parties (Dkt. 164-1), provides substantial monetary relief and valuable and meaningful Programmatic Relief for Class Members.

### A.    The Settlement Fund and Claims Resolution Process

The Settlement establishes a Settlement Fund of $6 million to compensate Settlement Class Members; provide for any court-approved attorneys' fees, costs, and service awards; and provide for all costs of administering the Settlement. (Settlement § VIII.A.)

The Settlement Fund will be distributed using a fair and innovative Claims Resolution Process. (*Id.* § VIII.C.) All Settlement Class Members will receive a formulaic Time in Pay Band Award, calculated based on the length of time they occupied certain pay bands while meeting the criteria of the class definition. (*Id.* § VIII.C.2.) Settlement Class Members may also receive a Discretionary Award based on an individualized assessment of their claims by a highly qualified Special Master and/or independent Neutral. To receive a Discretionary Award, Settlement Class

Members must submit a Claim Form that sets forth relevant and important facts for consideration in an individualized review. (*Id.* § VIII.C.3.) The Special Master will carefully oversee the Claims Resolution Process and approve all awards, ensuring fairness and consistency. (*Id.* § VIII.C.4–5.) (*Id.* § VIII.C.4.a.) To assist the Special Master, the Bureau will provide the Special Master with data needed to calculate the Time in Pay Band Award, and Class Counsel will inform the Special Master about the relevant CFPB policies and practices and the factual and legal bases for the suit. (*Id.* § VIII.C.2–4.)

Class Counsel will invest considerable time and effort to assist Settlement Class Members throughout the Claims Resolution Process, answering questions, explaining the claims process, and assisting Settlement Class Members in completing their Claim Forms. (*Id.* § VIII.D.)

### B.    Programmatic Relief

In addition to this monetary relief, the Bureau has agreed to important Programmatic Relief over a three-year period. This relief is designed to ensure Class Members are aware of their rights regarding complaints about race discrimination and retaliation. (*Id.* § VII.)

Further, current Bureau employees holding positions that qualify them for membership in the class are part of a bargaining unit represented by the National Treasury Employees Union ("NTEU"). The Class Representatives were part of the NTEU at the Bureau in order to represent the interests of employees. Jones served as a union steward, and Paz-Chow served as a chief steward. (Paz-Chow Decl., ¶ 7; Jones Decl., ¶ 7.) Contemporaneous with the prosecution of this lawsuit, the Bureau and the NTEU, including members of this class, have engaged in vigorous negotiations regarding compensation reform. These efforts were ultimately successful, and in December 2022, the Bureau and NTEU entered into a negotiated agreement that reformed the

Bureau's pay system entitled: "Agreement on Compensation Reform Pay Reset" ("Pay Agreement"). Class Counsel and Class Representatives recognize that this Pay Agreement substantially addresses the issues that they would have sought to address through Programmatic Relief in this matter. (Settlement § VII(A); Friedman Decl., ¶ 46.)

### III.    The Class Response to the Settlement Has Been Overwhelmingly Positive.

The Court-approved notice of the Settlement was delivered to all Class Members. (Exhibit 2, Declaration of Bryn Bridley (hereinafter "Bridley Decl."), ¶ 9.) The objection and opt-out period ended on November 16, 2023, and none of the 85 class members have either objected to the Settlement or opted out. Reaction to the Settlement has been overwhelmingly positive. Over 20 class members have contacted Class Counsel to inquire about their rights under the settlement, and many expressed gratitude for and approval of the Settlement and its terms. (Friedman Decl., ¶ 59).

### ARGUMENT

### I.    The Notice Provided to the Class Satisfies Due Process

A settlement must provide adequate notice to class members so they can make an informed choice about whether to opt out, object, and/or file a timely claim for a monetary award. *In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 68 (D.D.C. 2018) (explaining that a notice is "adequate and satisfies Rule 23 and due process if it 'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114–15 (2d Cir. 2005) (alteration in original)). Notice to class members must be "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(e)(1);

*see also In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d at 68 ("Notice need only

be reasonably calculated to reach the class in order to satisfy due process.").

In this case, the notices reviewed and approved by the Court were clear, accurate, and

satisfied due process. The notices plainly stated the terms of the Settlement and the Class

Members' options for proceeding. The claims Administrator mailed the Class Notices to each

Class Member, and it appears that all Class Members received notice. (Bridley Decl., ¶ 9.) The

Claims Administrator also established a website describing the Settlement and its terms and

containing links to view and download copies of all key documents, including the Settlement

Agreement, the Amended Complaint, the notice, the Preliminary Approval Order, Plaintiffs'

Motion for Service Awards to Class Representatives, and Plaintiffs' Motion for Attorneys' Fees

and Costs. Since the notice has been mailed, the website has received 248 visits from 153 unique

users visits. (*Id.*, ¶ 10.)

On September 1, 2023, the Bureau sent notices of the proposed Settlement to the

Attorney General of the United States, the Attorneys General of the 50 states, and the District of

Columbia, Guam, Puerto Rico, and the Virgin Islands, as required by the Class Action Fairness

Act, 28 U.S.C. § 1715(d). (Exhibit 3, Declaration of Ryan Cooper). No federal or state authority

has expressed opposition to the settlement. (*Id.*, ¶ 5.)

The Proposed Notices of Final Approval, attached as Exhibit 4, clearly, fully, and fairly

inform Class Members of the terms of the Settlement and their rights to participate in the

Settlement, how to do so, and who to contact if they need assistance.

## II.    The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved

The Settlement provides outstanding relief to the class and is fair, reasonable, and

adequate. Courts in this district operate "by the principle of preference favoring and encouraging

settlements in appropriate cases given the long-standing judicial attitude favoring class action settlements." *Howard v. Liquidity Servs. Inc.*, No. 14-cv-1183, 2018 WL 4853898, at *3 (D.D.C. Oct. 5, 2018) (internal quotations and citations omitted). "Thus, '[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with.'" *Id.* (quoting *Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996) (alteration in original)). In evaluating a class action settlement, courts consider whether (1) class counsel and class representatives had adequately represented the class, (2) the settlement was negotiated at arm's length, (3) the relief provided for the class is adequate, and (4) the claims resolution process treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2). The Settlement here easily satisfies each of these factors.

### A. Class Representatives and Class Counsel Have Adequately Represented the Class

The Class Representatives and Class Counsel have adequately represented the class. The Class Representatives took on a professional risk and dedicated hundreds of hours to prosecuting this important case to a successful conclusion on behalf of their fellow Class Members. They did much more than lend their name to a lawsuit. Each initiated EEO counseling with the Bureau's Office of Civil Rights before retaining counsel, and this case has been a part of their lives for almost the past ten years. The Class Representatives have been an invaluable resource for Class Counsel, aiding counsel's investigation, helping prepare EEO complaints and court pleadings, sitting for depositions, assisting counsel through personal remote appearances at Rule 30(b)(6) depositions, and participating in multiple mediation sessions. (Friedman Decl., ¶¶ 52–53.) Class Representatives have "vigorously prosecute[d] the interests of the class through qualified counsel," and "there is no conflict of interest between the" Class Representatives "and other members of the class." *Rogers v. Lumina Solar, Inc.*, No. 18-cv-2128, 2020 WL 3402360, at *6

(D.D.C. June 19, 2020) (quoting *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 161 (D.D.C. 2014)).

Class Counsel similarly invested substantial time, effort, and resources to assist the Class Representatives in securing an excellent result for the class, including by retaining an expert labor economist, engaging a respected mediator, and prosecuting the claims for nearly a decade through administrative actions and litigation. Class Counsel has extensive experience successfully litigating employment discrimination class action lawsuits, such as the seminal $160 million settlement on behalf of 1,400 Black financial advisors *McReynolds v. Merrill Lynch*, a $150 million settlement on behalf of female financial advisors in *Martens v. Smith Barney, Inc.*, and a $250 million settlement on behalf of female financial advisors in *Cremin v. Merrill Lynch.* (*Id.*, ¶¶ 10–11, 13.); *see also Alvarez*, 303 F.R.D. at 161 (finding class counsel adequate based on relevant past experience and prosecution of case).

**B. The Settlement Was Vigorously Negotiated at Arm's Length**

The terms of the Settlement were reached only after a fulsome exchange of discovery, the contours of which the parties hotly contested in motion practice, and extensive negotiations with the assistance of an experienced mediator. (Friedman Decl., ¶¶ 30–34.) The parties returned to mediation only after exchanging the reports of competing experts who analyzed the Bureau's employment data. The settlement negotiations were protracted and difficult and occurred during multiple mediation sessions and over a year's worth of subsequent discussions. (*Id.*) Class Representatives attended and participated fully in mediation sessions, along with their counsel. (Friedman Decl., ¶ 54.) The Settlement is the non-collusive product of litigation and fierce negotiations by experienced counsel armed with extensive discovery. As the Court previously explained, "the settlement was a product of serious, informed, non-collusive negotiations." (Dkt.

168, at 14 (internal quotations omitted).) These factors weigh heavily in favor of approving the

Settlement. *See In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004) ("A

presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached

in arm's length negotiations between experienced, capable counsel after meaningful discovery."

(internal quotations omitted)).

### C. The Relief Provided for the Class Is More Than Adequate

The $6 million Settlement Fund that will be distributed to 85 Settlement Class Members

offers substantial and meaningful monetary relief. Both Rule 23(e)(2)(C) and precedent in this

circuit provide factors under which to evaluate the adequacy of a settlement, and this Settlement

easily meets those factors. *See Stephens v. Farmers Rest. Grp.,* No. 17-cv-1087, 2019 WL

2550674, at *6 (D.D.C. June 20, 2019) (evaluating settlement relief both under enumerated Rule

23(e) factors and factors considered by courts in this district prior to 2018 amendments to Rule

23). Under Rule 23(e), the relief provided for the class must be "adequate, taking into account:"

(1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed

method of distributing relief to the class, including the method of processing class-member

claims"; and (3) "the terms of any proposed award of attorney's fees, including timing of

payment."[2] Courts in the District of Columbia also consider (1) "the terms of the settlement in

relation to the strength of plaintiffs' case"; (2) "the stage of the litigation proceedings at the time

of settlement"; and (3) "the reaction of the class" and "opinion of experienced counsel." *Little v.*

*Washington Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 34 (D.D.C. 2018) (internal

quotations omitted). The Settlement easily satisfied each of these factors, and, as this Court

---

[2] Courts also consider "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P.
23(e)(2). There is no such agreement in this case other than the Settlement Agreement itself.

explained, the terms of the Settlement "offer extensive programmatic and monetary relief that address plaintiffs' allegations." (Dkt. 168, at 14.)

### 1. Absent Settlement, Class Members Would Face Additional Costs, Risks, and Delay

Absent this Settlement, continued litigation of this action would be complex and lengthy, requiring the investment of considerable resources by both sides. The appropriateness of class certification and liability in this case is hotly contested, and both sides would face considerable risks should the litigation proceed. If this class were certified outside of the settlement process, Class Counsel expects the Bureau would file a Rule 23(f) appeal and, if necessary, a petition to the Supreme Court. Even if Plaintiffs overcame these risks—even if they obtained class certification, defeated the Bureau's merits defenses, and obtained a favorable liability verdict on behalf of the class at trial—they still would not have been guaranteed a class-based recovery, as the Court might determine that separate individual damages trials were necessary, introducing additional risk and delay for each Class Member who sought a recovery. Each of these add risk, and at best the class could expect years more of litigation before any recovery.

In light of the potential outcomes and risks, this Settlement is an outstanding result that will provide significant monetary relief available to each and every Settlement Class Member, even though some may not have prevailed in their individual claims in court.[3] In contrast to the complexity, delay, risk, and expense of continuing litigation, the proposed Settlement will produce prompt, certain, and substantial recovery for Settlement Class Members. Considering

---

[3] *See, e.g.*, Hon. Denny Chin, *Summary Judgment in Employment Discrimination Case: A Judge's Perspective*, 57 N.Y.L SCH. L. REV. 671, 672–73 (2013) (summary judgment is granted, in whole or in part, in employment discrimination cases approximately 77% percent of the time, a higher rate than other types of civil cases); *accord* Memorandum from Joe Cecil & George Cort, Fed. Judicial Ctr., to Judge Baylson, at 3 (Aug. 13, 2008), available at https://www.uscourts.gov/sites/default/files/sujulrs2.pdf (in employment discrimination cases in federal court, summary judgment motions by defendants are more common, more likely to be granted, and more likely to terminate the litigation than other case types).

the complicated, uncertain, and lengthy litigation facing Settlement Class Members, the

Settlement is plainly in the best interests of the class.

### 2. The Claims Resolution Process Will Effectively Allocate Relief to the Class

"As with settlement agreements, courts consider whether distribution plans are fair,

reasonable, and adequate." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-276, 2003

WL 22037741, at *7 (D.D.C. June 16, 2003). The Court should evaluate "the method of claims

processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23, committee

notes to 2018 amendments. A distribution plan is "sufficient where . . . there is a rough

correlation between the settlement distribution and the relative amounts of damages recoverable

by Class Members." *Howard*, No. 14-cv-1183, at *7 (internal quotations omitted).

The Settlement creates an individualized formula and process for fair allocation of the

Settlement Fund. The Claims Resolution Process guarantees a payment under the Time in Pay

Band Award and provides Settlement Class Members a meaningful opportunity to have their

claims individually assessed for potential additional recovery. Unlike many other settlements,

Monetary Awards for Settlement Class Members will not be computed solely by formula.

Instead, Settlement Class Members may elect to file a Claim Form and participate in a nuanced

and detailed process through which they may receive an individualized assessment of their

claims, including consideration of alleged post-employment wage loss and any emotional

distress. (Settlement § VIII.C.3–5.) The parties exhaustively negotiated the design of this

program, which redresses alleged wage disparities during CFPB employment while maintaining

the flexibility to compensate for damages resulting from other forms of alleged discrimination

and retaliation, such as a hostile work environment or wrongful discharge. In this way,

Settlement Class Members' Monetary Awards will be directly tied to the damages they would

allege from the claims they are releasing. The total Monetary Award for any one Settlement

Class Member is capped at $300,000 to ensure that no Settlement Class Member is paid a disproportionate amount of the Settlement Fund. (*Id.* § VIII.C.5.b.)

Subject to the Court's approval, the Claims Resolution Process will be monitored by an experienced, well-qualified Special Master, Professor Lynn P. Cohn, Co-Director of the Center on Negotiation, Mediation, and Restorative Justice at the Northwestern Pritzker School of Law, whom other courts have appointed in a similar capacity. *See, e.g.*, *Creighton v. Metropolitan Life Ins.*, 15-cv-08321 (S.D.N.Y. 2017), ECF No. 108; *Slaughter v. Wells Fargo Advisors, LLC*, 13-cv-6368, (N.D. Il. 2017), ECF No. 109; *McReynolds v. Merrill Lynch*, 05-cv-6583 (N.D. Ill. 2014), ECF Nos. 585-1, 637. Professor Cohn will review and assess the Claim Forms and make final awards, providing fairness and consistency. To ensure the best-informed decisions, Class Counsel will provide a detailed overview of the Bureau's employment practices and the class claims to Professor Cohn and any independent, qualified Neutrals who assist her. Class Counsel will also assist and provide support for Settlement Class Members throughout the Claims Resolution Process by answering questions, advising them of their rights and options, and helping them complete and submit Claim Forms.

### 3. The Requested Attorneys' Fees Are Reasonable and Should Not Bear on the Adequacy of the Settlement.

As explained more thoroughly in Plaintiffs' Motion for Attorneys' Fees and Costs, the requested attorneys' fees of 25% of the fund are reasonable and lower than both awards in similar cases and the lodestar in this case. (Dkt. 169); *see also Meyer v. Panera Bread Co.*, No. 17-cv-2565, 2019 WL 11271381, at *9, 12 (D.D.C. Mar. 6, 2019), *report and recommendation adopted sub nom. Meyer v. Panera, LLC*, No. 17-cv-2565, 2019 WL 11271378 (D.D.C. Mar. 29, 2019) (approving 33.48% of common fund for attorneys' fees); *Kosen v. Am. Express Fin. Advisors, Inc.*, No. 02-cv-0082 (D.D.C. June 16, 2002), ECF No. 15 (awarding class counsel

35% of fund for fees and costs in employment discrimination class action that settled before

discovery). Further, substantive discussions of attorneys' fees were deferred until after an

agreement was reached on the other terms of the settlement agreement, (Friedman Decl., ¶ 57),

and this Circuit's percentage-of-the-fund method "guard[s] against potential abuses" as counsel's

and class members interests are aligned, *Hubbard v. Donahoe*, 958 F. Supp. 2d 116, 124 (D.D.C.

2013); *cf. True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1078 (C.D. Cal. 2010) ("Where

the class payment and fees are negotiated together, there is thus a concern that class counsel

engaged in a tradeoff between merits relief and attorney's fees." (internal quotations omitted)).

Finally, if the Court identified any issue with the requested attorneys' fees, Class Counsel

respectfully submits that the appropriate resolution would be to adjust the awarded fees and not

disapprove of the Settlement.

### 4. The Settlement Will Deliver Outstanding Relief to the Class and Should Be Approved

In evaluating a settlement's adequacy, courts consider the terms of the settlement "in

relation to the strength of plaintiffs' case." *Little*, 313 F. Supp. 3d at 34. "[L]iability cannot be

assumed when evaluating a proposed settlement," and "[t]he value of the settlement must be

balanced against the likelihood of obtaining a substantial recovery at trial." *Radosti v. Envision

EMI, LLC*, 717 F. Supp. 2d 37, 58–59 (D.D.C. 2010).

If this case were to proceed, "Defendants would seek to oppose class certification and

disaggregate Plaintiffs' claims." *Alvarez*, 303 F.R.D. at 163–64 (considering this fact in

weighing the settlement against the strength of the plaintiff's claims). Plaintiffs would also have

to "prevail on the merits" and then it may be that "each individual class member would have had

to demonstrate their monetary damages." *Little*, 313 F. Supp. 3d at 37 (considering these factors

when "weigh[ing] the benefits from the Settlement Agreement against the strength of the

Plaintiffs' case"). Although Class Counsel believes it would ultimately prevail, it also recognizes that "claims alleging systemic employment discrimination are difficult to win." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001); *accord* Memorandum from Joe Cecil & George Cort, Fed. Judicial Ctr., to Judge Baylson, at 3 (Aug. 13, 2008), available at https://bit.ly/474x1km (in employment discrimination cases in federal court, summary judgment motions by defendants are more common, more likely to be granted, and more likely to terminate the litigation than other case types); *cf. Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349, 360 (D.D.C. 2007) (relying on fact that plaintiffs acknowledged that "antitrust conspiracy cases are complex and difficult, making victory uncertain" in considering the terms of the settlement relative to the strength of the case).

In light of this, the Settlement Fund of $6 million, negotiation of which was informed by expert analysis of wage disparities (Friedman Decl., ¶ 32), provides exceptional monetary relief to the Settlement Class Members harmed by the policies and practices challenged in this litigation. In fact, if approved, this Settlement will provide a per capita payout of over $70,000, which is higher than the per capita awards in the largest employment discrimination class or collective action settlements in 2021 or 2022, only two of which provided for per capita relief of over $50,000.[4] Given the risk that the class may never recover and the substantial relief provided by the Settlement, the terms of the settlement are adequate.

---

[4] *See,* SEYFARTH SHAW LLP, *18th Annual Workplace Class Action Litigation Report* at 33–34, *available at* https://bit.ly/3FtlQGq (listing largest employment discrimination class settlements in 2021); DUANE MORRIS, *Class Action Review-2023*, 57–58, *available at* https://aboutblaw.com/6hT, (listing largest employment discrimination class settlements in 2022). For detailed citations regarding the calculation of per capita awards, please see materials cited at Dkt. 170, 12–13.

5.    **The Settlement Is Adequate in Light of the Stage of the Litigation Proceedings**

In evaluating this factor, courts generally "consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery." *Alvarez*, 303 F.R.D. at 164 (quoting *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 117 (D.D.C. 2007)). "The settlement must 'not come too early to be suspicious nor too late to be a waste of resources,' but instead should occur 'at a desirable point in the litigation for the parties to reach an agreement and to resolve the[ ] issues without further delay, expense, and litigation.'" *Howard*, 2018 WL 4853898, at *6 (quoting *In re Vitamins*, 305 F. Supp. 2d at 105) (alteration in original).

Here, the Settlement was reached following years of litigation and expansive discovery including the exchange of over 100,000 documents, nine Rule 30(b)(6) and fact witness depositions, and expert analyses of Bureau compensation data. This Settlement does not come too early, as this discovery provided each party with sufficient information to assess settlement against the risks of continued litigation. Nor does this Settlement come too late, after extensive resources were expended on class certification or merits briefing.

6.    **The Positive Reaction of the Class and the Opinion of Experienced Class Counsel Support the Settlement's Adequacy**

In an 85-member class, zero members have objected and zero have opted out. Both Class Representatives fully endorse the settlement. Class Counsel's office has fielded over 20 phone calls from class members, many of whom spoke positively about the settlement. (Friedman Decl., ¶ 59.) Therefore, "[t]his factor therefore unambiguously weighs in favor of approval." *Alvarez*, 303 F.R.D. at 164 (approving class action in part because there were no opt outs or objections).

17

"[C]ourts generally agree that 'the opinion of experienced counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'" *Rogers*, 2020 WL 3402360, at *10 (quoting *Alvarez*, 303 F.R.D. at 164). Class Counsel has decades of experience in prosecuting employment discrimination class actions. (Friedman Decl., ¶¶ 6-13.) Based on its experience and an in-depth analysis of the merits, record, and risks of this action, Class Counsel enthusiastically recommends this Settlement to the Court for approval. (*Id.*, at ¶ 47.)

### D. The Claims Resolution Process Treats Class Members Equitably

The Claims Resolution Process will ensure a fair and equitable distribution of the Settlement Fund. As explained in more detail above, *see supra* III.C.2, the Claims Resolution Process will redress alleged wage disparities during CFPB employment while maintaining the flexibility to compensate for damages resulting from other forms of alleged discrimination and retaliation, such as a hostile work environment or wrongful discharge. In this way, Settlement Class Members' Monetary Awards will be directly tied to the damages they would allege from the claims they are releasing. *See Howard*, 2018 WL 4853898, at *7 (explaining that a distribution plan is "sufficient where . . . there is a rough correlation between the settlement distribution and the relative amounts of damages recoverable by Class Members." (internal quotations omitted)); Fed. R. Civ. P. 23, committee notes to 2018 amendments (explaining that courts should consider whether "apportionment of relief among class members takes appropriate account of differences among their claims").

### III. The Settlement Class Meets Rule 23 and Should Be Certified

On September 15, 2023, this Court provisionally certified the class for settlement purposes, finding that it satisfied "[a]ll four requirements" of Rule 23(a), along with the

requirements of Rule 23(b)(2) and Rule 23(b)(3). (Dkt. 168, at 7–13.) Plaintiffs now move to certify for settlement purposes a class of Black/African American, and/or Hispanic employees of the Bureau who, at any time between February 13, 2011, and April 19, 2022, served in a non-supervisory position(s) that was assigned to the Bureau's Office of Consumer Response, that was in pay bands identified by the Bureau as 4, 4A, 4B, 40, 41, 5, 5A, 5B, 5C, 51, 52, 53, 6, 6A, or 60, and that was classified by the Bureau as falling within occupational job series code 301 (except that service in any of the following positions does not make an individual eligible to be a member of the class: Consumer Response Implementation Manager (associated with position description number 110090), Consumer Response Manager (Quality Control) (associated with position description number 111410), Policy Analyst (associated with position description number 110210), or Consumer Response Analyst (associated with position description number 110770)).

### A.    The Class Meets All Requirements of Rule 23(a)

The proposed Class meets all requirements of Rule 23(a) as "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and "(4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

Numerosity is met as the class includes 85 members, making joinder impracticable. *See, e.g.*, *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) ("There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement," however "courts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet this requirement.")

Commonality is often found where "plaintiffs allege widespread wrongdoing by a defendant" and "a uniform policy or practice that affect all class members," as Plaintiffs do here. *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014) (citation omitted). Through discovery, Plaintiffs identified common questions of law and fact that meet Rule 23(a)(2), including whether the Bureau engaged in a pattern or practice of racial discrimination and/or national origin discrimination and whether the Bureau's policies and practices regarding compensation, pay setting, and movement within the Bureau discriminated against Black/African American and Hispanic employees. *See Taylor*, 241 F.R.D. at 40, 48 (certifying class of Black employees in Title VII action in part due to discriminatory compensation policies and practices). Determination of the truth or falsity of these allegations would "resolve an issue that is central to the validity" of each Class Member's claim "in one stroke," thereby satisfying the commonality requirement. *In re District of Columbia*, 792 F.3d 96, 99 (D.C. Cir. 2015) (internal quotations omitted).

The Class Representatives' claims are typical of the class claims because they, like the class, are Black/African American or Hispanic, meet the definition of class membership, and were subjected to and harmed by the same discriminatory policies and practices challenged in this litigation. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 & 157 n.13 (1982); *Cook v. Billington*, No. 82-cv-0400, 1988 WL 142376, at *4 (D.D.C. Dec. 13, 1988) (finding named plaintiffs met typicality requirement when they "allege that they and the proposed class have suffered from the same employment practice").

Class Representatives have protected the interests of the class fairly and adequately. As explained above, they have devoted considerable time to meeting with Class Counsel and participating in the negotiation of this Settlement. Class Representatives retained experienced

Class Counsel, who have regularly been appointed class counsel, including in other employment discrimination class action lawsuits. (Friedman Decl., ¶¶ 6–13.)

### B.    The Class Meets the Requirements of Rule 23(b)(2) and 23(b)(3)

Certification under Rule 23(b)(2) is warranted because Plaintiffs allege that Defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Plaintiffs allege that every Class Member was subject to Bureau-wide policies and practices that harmed Black/African American and Hispanic non-supervisory employees within the Office of Consumer Response, including compensation policies.

The class is also properly certified under Rule 23(b)(3). The common factual and legal issues and proof of class-wide liability and damages this case presents are "questions of law or fact common to class members that predominate over any questions affecting individual members," and a class action is therefore "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *see Moore v. Napolitano*, 926 F. Supp. 2d 8, 33 (D.D.C. 2013) (finding predominance and superiority in Title VII pattern and practice race discrimination case); *Chi. Tchrs. Union v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 443–45 (7th Cir. 2015) (Rule 23(b)(2) and 23(b)(3) certification in case for injunctive and monetary relief). As this Court recognized, "a class action will be more efficient than individual actions and will promote uniformity in decisions." (Dkt. 168, at 13.)

The parties' Settlement is also relevant to the Rule 23(b)(3) analysis. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997). Any manageability or predominance concerns relating to individual proceedings and defenses are satisfied by the Settlement and its Claims Resolution Process. *See In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 18 (D.D.C. 2015)

("[T]he existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis." (internal quotations omitted)).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court give final approval to the Settlement and certify the class for settlement purposes.

Dated: December 6, 2023

Respectfully submitted,
**STOWELL & FRIEDMAN, LTD.**

By:___*/s/ Linda D. Friedman*
Linda D. Friedman (pro hac vice)
George S. Robot
Truscenialyn Brooks (pro hac vice)
Caitlin M. Kearney (pro hac vice)

Stowell & Friedman
303 W. Madison St., Ste. 2600
Chicago, IL 60606
Telephone: (312) 431-0888
lfriedman@sfltd.com
grobot@slftd.com
tbrooks@sfltd.com
ckearney@sfltd.com

Justin Leinenweber (pro hac vice)
Justin L. Leinenweber, P.C.
120 N LaSalle St Ste 2000,
Chicago, IL 60618
Telephone: 312-857-3405
justin@ilesq.com