IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARZANNA JONES and HEYNARD L. PAZ-CHOW, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>ROHIT CHOPRA, in his official capacity as Director, Consumer Financial Protection Bureau, and CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Defendants. | Civil Action No. 18-2132 (BAH)<br><br>**Judge Beryl A. Howell**<br><br>**Jury Trial Requested** |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
FOR SERVICE AWARDS TO CLASS REPRESENTATIVES**

**INTRODUCTION**

Plaintiffs ask that $100,000—equivalent to over $1,000 from each of the 83 absent class members—be diverted from the common fund to pay a $50,000 service award to each Named Plaintiff.  That figure is far above the norm for service awards in settlements of this size, particularly where, as here, each Named Plaintiff stands to receive up to the $300,000 maximum that can be paid as monetary relief to a single class member under the settlement agreement.  The Court should reduce Named Plaintiffs' proposed service awards to be more in line with relevant caselaw and thereby preserve more funds for the entire class.

The cases Plaintiffs cite as comparators do not justify the large compensation they seek. These cases grant service awards far smaller than the $50,000 Plaintiffs request here, involve common funds far larger than the $6 million fund here, or compensate class representatives who (unlike the Named Plaintiffs here) did not receive any other payment from the settlement.  The

1

Court should, accordingly, reduce the proposed service awards consistent with the weight of authority.

## ARGUMENT

### A. Plaintiffs' request warrants heightened scrutiny.

This Court has recognized that service awards are granted to "allow[] modest compensation to class representatives." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290 (TFH), 2003 WL 22037741, at *10 (D.D.C. June 16, 2003) (quoting *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985)).  Service awards are intended "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam*, 205 F.R.D. 369, 400 (D.D.C. 2002) (cleaned up).  When such awards are not paid from funds that would otherwise go to other class members, they "need not be subject to intensive scrutiny." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005) (quotation omitted).  But where, as here, Plaintiffs request that their awards be paid from a common settlement fund, the court should "carefully review[]" the request because it will "deplet[e] the financial resources" available to the class as a whole. *Id.*; *see also* Settlement Agreement at 28 (Dkt. 164-1) (providing that $6 million settlement payment includes all monetary awards to class members and all service awards to the Named Plaintiffs).

### B. The $50,000 service awards requested by Plaintiffs would be excessive.

While the Bureau does not oppose granting the class representatives appropriate, modest service awards, Plaintiffs request an amount substantially higher than what judges in this district have granted in comparable cases.  For instance, in *Little v. Washington Metropolitan Area Transit Authority*, this Court granted a $7,500 service award to each of eight class representatives in a strikingly similar case.  313 F. Supp. 3d 27, 39 (D.D.C. 2018).  That case, like this one, was

an employment discrimination case against a government agency. *Id.* at 32 (describing claims at issue). And just as Plaintiffs represent that the Named Plaintiffs here invested substantial time and effort in this litigation, Pls.' Mot. at 7–9 (Dkt. 170), this Court found that the class representatives in *Little* "played a significant role in the litigation" by "attend[ing] multiple in-person group meetings to discuss the litigation, participat[ing] in telephone conferences, [meeting] individually with Class Counsel, and provid[ing] documents in response to Defendants' document requests," 313 F. Supp. 3d at 39. Like the Named Plaintiffs here, each of the class representatives in *Little* was also deposed. *Id.* And the $6.5 million the defendant agency in *Little* paid in total monetary relief, *id.* at 32–33, is even more than the $6 million the Bureau has agreed to pay here. Yet the $50,000 award each Named Plaintiff seeks here is more than six times greater than the $7,500 awarded to each class representative in *Little*, and the $100,000 in total service awards requested here well exceeds the $60,000 in total service awards granted in that case.[1]

None of the cases cited by Plaintiffs as a comparator resembles this case as closely as *Little*. Indeed, only one of those cases addresses facts that even superficially resemble those presented here. *See* Mot. at 17 (citing *Thomas v. Albright*, 139 F.3d 227, 229 (D.C. Cir. 1998)). *Thomas* was an employment discrimination case in which the class representatives, like the Named Plaintiffs here, "made the risky decision to publicly sue their past or current employer," Mot. at 8; *see also* 139 F.3d at 229. From a $3.8 million settlement fund, this Court awarded slightly under $3,000 each to 29 of the 30 class representatives, and $40,000 to the thirtieth for "his leadership and coordinating role." *Id*. Critically, however, that $40,000 service award was

---

[1] The Court in *Little* also granted $5,000 each in service awards to two individuals who were not class representatives. 313 F. Supp.3d at 39.

the only compensation that the thirtieth class representative received in connection with the settlement. *See Thomas v. Christopher*, 169 F.R.D. 224, 234 n.1 (D.D.C. 1996) ("Mr. Thomas has elected to opt out of the settlement, so he will not receive this or any other sum from the settlement."), *aff'd in part, rev'd in part sub nom. Thomas v. Albright*, 139 F.3d at 227. In contrast, the $50,000 Plaintiffs here ask the Court to award each Named Plaintiff constitutes an even larger service award than the $40,000 this Court awarded the class representative in *Thomas* as total compensation—on top of the up to $300,000 each Named Plaintiff here may also obtain as monetary relief from the common fund in their capacity as class members. *See* Settlement Agreement at 34 (setting $300,000 maximum recovery for a single class member).

Like *Thomas*, the thirteen other cases Plaintiffs cite as comparators—including the decision cited in Plaintiffs' Notice of Supplemental Authority, Dkt. 173—confirm that a $50,000 service award would be excessive here. In four of those cases, the class representatives received service awards less than half the amount Plaintiffs seek here. For instance, Plaintiffs incorrectly state that the court in *Chen v. Western Digital Corp.* granted the class representative a $50,000 service award. Mot. at 16 (citing *Chen*, No. 19-cv-00909, 2021 WL 9720778, at *2, 9–10 (C.D. Cal. Jan. 5, 2021)). Plaintiffs are mistaken. Not only did the *Chen* court grant a service award of only $18,000, but it did so after rejecting the plaintiffs' request for an even higher award. *Chen*, 2021 WL 9720778, at *9. Although the proposed settlement agreement contemplated a $50,000 service award, the plaintiffs in *Chen* eventually sought only $30,000 after the court at preliminary approval "expressed concern about the [$50,000] amount." *Id*. At final approval, the court found even the $30,000 request "unreasonably high" compensation for the 180 hours the class representative expended on the litigation. *Id.* at *10. The court ultimately awarded only $18,000—not the $50,000 Named Plaintiffs claim in their motion. *Id.*; Mot. at 16.

4

Plaintiffs' other cases fare no better in supporting their argument, and only three involve settlements remotely similar in size to that here. Plaintiffs rely on *Trombley v. National City Bank*, where this Court granted—from a $13.8 million fund over twice as large as the settlement here—a $5,000 service award to each of three class representatives. 826 F. Supp. 2d 179, 183–84 (D.D.C. 2011) (cited at Mot. at 13–14). *Trombley* therefore does not support Named Plaintiffs' request for an award ten times that size. Only two other cases cited by Plaintiffs involve settlement funds smaller than that in *Trombley*, and both granted service awards that were similarly modest. *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 75, 79–80 (D.D.C. 2011) (cited at Mot. at 14) (granting $2,500 each to six class representatives from an $8 million common fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 180, 187 (W.D.N.Y. 2005) (cited at Mot. at 17) (granting $10,523.37 service award to single class representative from $125,000 common fund for a class of 28 members).

Plaintiffs' Motion also points to eight other cases in which the court granted somewhat larger service awards. *See* Mot. at 13, 16. But each such case drew service awards from settlement funds at least quadruple the size of the $6 million fund here, and half involved settlements over seventeen times as large. *See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05-cv-6583, Dkt. 611, at 5 (N.D. Ill. Nov. 21, 2013) (cited at Mot. at 16, 17) ($160 million fund); *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 100 (D.D.C. 2013) (cited at Mot. at 13) ($146.75 million fund); *Ellis v. Google*, CGC-17-561299, Final Approval Order, Ex. A, at 20 (Sup. Ct. Cal. Oct. 25, 2022) (cited at Mot. at 16) ($118 million fund); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 n.11 (N.D. Ga. 2001) (cited at Mot. at 16)

($103.5 million fund);[2] *Slaughter v. Wells Fargo Advisors, LLC*, No. 13-cv-06368, 2017 WL 3128802, at *3 (N.D. Ill. May 4, 2017) (cited at Mot. at 16, 17) ($35.5 million fund); *Bland v. Edward D. Jones & Co.*, No. 18-cv-3673, Dkt. 139, Ex. B, at 27–28 (N.D. Ill. July 1, 2021) (cited at Mot. at 16) ($34 million fund); *Creighton v. Metropolitan Life Ins. Co.*, No. 15-cv-8321, Dkt. 118, at 4 (S.D.N.Y. June 14, 2017) (cited at Mot. at 16) ($32.5 million fund); *Senegal v. JPMorgan Chase Bank, N.A.*, No. 18-cv-6006, Dkt. 26, at 5–6 (N.D. Ill. Dec. 12, 2018) (cited at Mot. at 16, 17) ($24 million fund).  And Plaintiffs' subsequent Notice of Supplemental Authority cites a ninth, equally factually dissimilar case involving a $215 million settlement fund—more than thirty-five times larger than that here—in which the court awarded $250,000 service awards to each of four class representatives who had "spent at least 5,000 hours on behalf of the Class," an order of magnitude more than the "hundreds of hours" Plaintiffs state the Named Plaintiffs expended in this case.  Dkt. No. 173, Ex. 1, *Chen-Oster v. Goldman Sachs & Co.*, No. 10-CIV-6950-AT-RWL (S.D.N.Y. Nov. 7, 2023) at 6, 12–13; Mot. at 7.

    Plaintiffs also argue that three of these nine cases granted service awards that consumed a larger percentage of the settlement fund than the 1.67% they ask be diverted here.  Mot. at 17. But none of these cases are from this district, and none awarded more than 0.625% to any one class representative.  *Senegal*, No. 18-cv-6006, Dkt. 40, at 5 (N.D. Ill. Dec. 20, 2018) (awarding $150,000, representing 0.625% of the $24 million fund, to each of six class representatives); *Slaughter*, No. 13-cv-06368, 2017 WL 3128802, at *3, 8, 9 (N.D. Ill. May 4, 2017) (awarding $175,000, representing 0.493% of the $35.5 million fund, to each of six class representatives);[3]

---

[2] The $103.5 million figure excludes over $50 million in additional prospective relief.  *See Ingram*, 200 F.R.D. at 694 n.11.
[3] Plaintiffs' Motion inaccurately states that the court in *Slaughter* awarded $175,000 each to seven named plaintiffs for a total of $1.25 million.  Mot. at 16, 17.  As noted here, there were in

6

*McReynolds*, No. 05-cv-6583, Dkt. 616, at 5 (N.D. Ill. Dec. 6, 2013) (awarding $250,000, representing 0.156% of $160 million fund, to each of seventeen class representatives).[4] These cases thus do not support a $50,000 service award, representing 0.83% of the $6 million fund, for each Named Plaintiff here.

Plaintiffs also rely on a law review article to argue that the nature of employment discrimination class actions prompts courts to grant, on average, just under $70,000 in service awards to class representatives in such cases. Mot. at 15 (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303 (2006)). But that figure was skewed, as the article itself acknowledges. Not only did the authors rely on a sample size of only six employment discrimination cases, but the $70,000 average was "substantially influenced by four $300,000 awards" granted in a single case. Eisenberg & Miller, *Incentive Awards to Class Action Plaintiffs*, 53 UCLA L. REV. at 1339; *see also id.* at 1339 n.70 (identifying relevant case as *Ingram*, 200 F.R.D. at 694). And those $300,000 outliers were awarded in the *Ingram* case noted above, which involved a $103.5 million settlement fund over 17 times larger than the fund here. *Ingram*, 200 F.R.D. at 694 n.11 ("Under the settlement, the [defendant] has agreed to current cash payments of approximately $103.5 million.").[5] Moreover, like the lead plaintiff in *Thomas*, the three class representatives in

---

fact six class representatives awarded a total of $1.05 million. *Slaughter*, No. 13-cv-06368, 2017 WL 3128802, at *3, 8 (N.D. Ill. May 4, 2017).

[4] Plaintiffs also point to *Thomas* and *Frank* as cases in which larger percentages of the settlement fund were awarded to class representatives. But, as discussed above, 29 of the 30 class representatives in *Thomas* received under $3,000 (less than 0.1% of the $3.8 million settlement), and the thirtieth did not receive any payment other than the service award from the settlement. *See infra* at 3–4. And the class representative in *Frank* was awarded only $10,523.37. *See infra* at 5.

[5] As is also noted above, that $103.5 million figure excludes over $50 million in additional prospective relief. *See infra* at 6 n.2.

*Ingram* obtained service awards "in lieu of, not in addition to, the compensation they would otherwise receive as members of the class." *Id.* at 694. Therefore, neither *Ingram* nor the skewed figure from Plaintiffs' law review article supports granting the $50,000 service awards requested by Plaintiffs here, where the Named Plaintiffs may receive as much as $300,000 in additional settlement awards from the common fund.

In short, the fourteen cases on which Plaintiffs rely as comparators confirm that $50,000 service awards would be excessive and inconsistent with relevant caselaw. Four of those cases granted a total of $18,000 or less in service awards for all class representatives combined. Of the ten cases that granted more, nine drew those awards from settlement funds between four and thirty-five times the size of the fund available here, and two—including the only one involving a settlement under $24 million—granted service awards to class representatives that did not obtain any other payment from the common fund.

Accordingly, if this Court finds service awards to be appropriate here, it should reduce Plaintiffs' proposed $50,000 sum to preserve more funds for other class members in light of the relatively modest size of the common fund from which those awards will be paid, and the fact that each Named Plaintiff already stands to receive up to $300,000 from that fund in separate monetary relief.

## CONCLUSION

For the reasons stated above, the Court should reduce Plaintiffs' proposed service awards of $50,000 for each Named Plaintiff.

Dated: December 12, 2023

Respectfully submitted,

<u>/s/ Ryan Cooper</u>
Seth Frotman
   *General Counsel*
Steven Y. Bressler
   *Deputy General Counsel*
Thomas McCray-Worrall
   *Senior Counsel*
Allison Ziegler
   *Senior Counsel*
Derick Sohn
   *Senior Counsel*
Ryan Cooper
   *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 702-7541 (telephone)
(202) 435-7024 (facsimile)
ryan.cooper@cfpb.gov

*Counsel for Defendant*
*Consumer Financial Protection Bureau*