## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CARZANNA JONES and HEYNARD L.
PAZ-CHOW, on behalf of themselves and
all others similarly situated,

    Plaintiffs,

  v.

ROHIT CHOPRA, in his official capacity as
Director, Consumer Financial Protection
Bureau, and CONSUMER FINANCIAL
PROTECTION BUREAU,

    Defendants.

Civil Action No.: 18-2132 (BAH)

**Judge Beryl A. Howell**

**Jury Trial Requested**

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
### SERVICE AWARDS TO CLASS REPRESENTATIVES

George S. Robot
Linda D. Friedman (pro hac vice)
Truscenialyn Brooks (pro hac vice)
Caitlin M. Kearney (pro hac vice)
STOWELL & FRIEDMAN, LTD.
303 W. Madison St., Suite 2600
Chicago, IL 60606
Telephone: (312) 431-0888
lfriedman@sfltd.com
grobot@sfltd.com

Justin L. Leinenweber (pro hac vice)
Justin L. Leinenweber, P.C.
120 N LaSalle St Ste 2000,
Chicago, IL 60618
Telephone: (312) 857-3405
justin@ilesq.com

*Attorneys for Plaintiffs, on behalf of themselves
and all others similarly situated*

January 9, 2024

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................................ 4

I.      Paz-Chow's and Jones's Actions, Efforts, and Risks Warrant $50,000 Service
        Awards, and Requesting Fees and Service Awards Separately Does Not Change the
        Analysis ................................................................................................................. 4

II.     No Class Member Objected to the Service Awards, Providing Clear Evidence
        of the Service Awards' Reasonableness .................................................................. 6

III.    Class Representatives Invested Hundreds of Hours of Their Time and Endured Great
        Personal Costs to Prosecute the Class Claims ....................................................... 8

IV.     The Outstanding Result for the Class Warrants the Requested Service Awards .............. 12

V.      Class Representatives Will Be Treated the Same as All Other Settlement Class Members
        During the Claims Resolution Process ................................................................... 16

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Bland v. Edward D. Jones & Co., L.P.*, 18-cv-03673, ECF Nos. 119-2 and 139
  (N.D. Il. July 15, 2021) ........................................................................................................ 15

*Chen v. Western Digital Corp.*, No. 819-cv-909, 2021 WL 9720778 (C.D. Cal.
  Jan. 5, 2021) ...................................................................................................................... 14

*Chen-Oster v. Goldman Sachs & Co.*, No. 10-cv-6950, 2023 WL 7325264 (S.D.N.Y.
  Nov. 7, 2023) ............................................................................................................. 8, 14, 15

*Cobell v. Jewell*, 29 F. Supp. 3d 18 (D.D.C. 2014) ........................................................... 5

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ...................................................... 4, 11, 16

*Creighton v. Metropolitan Life Insurance Company*, No. 15-cv-8321, Dkt. 138
  (S.D.N.Y. June 27, 2017) ................................................................................................ 8, 15

*Curtis-Bauer v. Morgan Stanley & Co.*, No. 3:06-cv-3903 (N.D. Cal. Feb. 7 &
  Oct. 22, 2008) ...................................................................................................................... 11

*Ellis v. Google,* No. CGC-17-561299, (Cal. Super. Ct., Jun. 21, 2022) ....................................... 15

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ................................................ 9

*In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-0276, 2003 WL 22037741
  (D.D.C. June 16, 2003) .......................................................................................................... 5

*Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88 (D.D.C. 2013) ........................................ 12

*Kosen v. Am. Express Fin. Advisors, Inc.*, No. 02-cv-0082 (D.D.C. June 16, 2002) ..................... 6

*Little v. Washington Metropolitan Area Transit Authority*, 313 F. Supp. 3d 27
  (D.D.C. 2018) .................................................................................................................. 3, 13

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 05-cv-6583, (N.D. Il.
  Dec. 6, 2013) .................................................................................................................. 8, 14

*Pan v. Qualcomm Inc.*, No. 16-cv-1885, 2017 WL 3252212 (S.D. Cal. July 31, 2017) ............... 7

*Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08-cv-7670, 2010 WL 532960
  (S.D.N.Y. Feb. 9, 2010) .................................................................................................... 9, 17

*Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73 (D.D.C. 2011) ........................................... 12

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) ..................................................... 9

*Senegal v. JPMorgan Chase Bank, N.A.*, 18-cv-6006 (N.D. Il. December 20, 2018) ................. 15

*Sewell v. Bovis Lend Lease, Inc.*, No. 09-cv-6548, 2012 WL 1320124 (S.D.N.Y.
  Apr. 16, 2012) .................................................................................................................. 7, 9

*Slaughter v. Wells Fargo Advisors, LLC,* 13-cv-6368 (N.D. Il. Apr. 28, 2017) ..................... 8, 14

*Tiro v. Pub. House Invs., LLC*, No. 11-cv-7679 (S.D.N.Y. Sept. 10, 2013) ............................... 5

*Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179 (D.D.C. 2011) ........................................... 12

*Varacallo v. Massachusetts Mutual Life Insurance Company*, 226 F.R.D. 207
  (D.N.J. 2005) ........................................................................................................................ 5

*Velez v. Novartis Pharm. Corp.*, No. 04-CIV-09194-CM, 2010 WL 4877852
  (S.D.N.Y. Nov. 30, 2010) ...................................................................................................... 11

*Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1 (D.D.C. 2008) ......................................... 1, 5, 12

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ........................................................ 14

Since this Court preliminarily determined that a $50,000 service award each to Class Representatives Heynard Paz-Chow and Carzanna Jones "appears reasonable, pending the fairness hearing and final settlement approval," (Dkt. 168, at 15), the absent Class Members have registered their unanimous agreement—not a single Class Member objected to the service awards (or any aspect of the Settlement) or opted out of the Settlement. After taking an unopposed extension to consider the class's reaction to the service awards before responding, (Dkt. 171; Minute Order of November 9, 2023), Defendants have decided to disregard these sophisticated Class Members' opinions to lodge a baseless and spiteful objection against compensating the two people brave enough to stand up to Defendants.[1]

Defendants' objection is not only retaliatory and groundless but speaks eloquently to the need for service awards. Courts in this district consider factors like the Class Representatives' actions, time and effort, risks, and the result they delivered. *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 8–9 (D.D.C. 2008) (granting service award over eight times larger than the largest possible individual recovery). Defendants largely do not address these factors. They thus do not dispute that Paz-Chow and Jones undertook substantial risk by coming forward and have suffered resulting financial and professional harm. Indeed, as alleged, Defendants gave Paz-Chow a choice: drop his EEO complaint that led to this suit or face termination when his contract expired. Because Paz-Chow persisted with his EEO complaint, he was denied a permanent position with CFPB and thereafter endured an extended period of unemployment. (Dkt. 170-1, Declaration of Heynard Paz-Chow (hereinafter "Paz-Chow Decl."), ¶ 8.) Jones, who remained a CFPB employee throughout this litigation, endured the stress of reporting to work each day for almost a decade while suing her employer. (Dkt. 170-2, Declaration of Carzanna Jones

---

[1] This motion incorporates by reference the definitions in the Settlement (Dkt. 164-1) and all capitalized terms not defined herein shall have the same meanings as set forth in the Settlement.

(hereinafter "Jones Decl."), ¶¶ 20–23).) Not surprisingly, after filing this lawsuit, Jones never received a promotion or pay grade change. Both are the only Class Members permanently associated with this case and bear the risk that a future employer searching their names on Google will decide it is not worth the trouble to hire someone who sued their employer. (Paz-Chow Decl., ¶ 22.; Jones Decl., ¶ 22.) Defendants do not dispute that Paz-Chow and Jones devoted hundreds of hours to work for the class over the last nine-plus years, including filing administrative complaints, giving depositions, advising counsel, and actively participating in mediations. (Paz-Chow Decl., ¶¶ 2, 11; Jones Decl., ¶ 2, 11.) Nor do Defendants contest that Paz-Chow and Jones have secured significant relief for the class at the expense of their own individual claims. Significantly, Paz-Chow and Jones continued their pursuit for justice and compensation for Class Members even after the EEOC refused to certify the class, delaying resolution of their individual claims. And ultimately, Paz-Chow and Jones agreed to execute general releases that the Class Members will not have to sign. (Settlement Agreement § V.B.) Moreover, Defendants do not dispute that Paz-Chow's and Jones's efforts achieved an exceptional result for the class—the *per capita* recovery for this class of civil servants is over $70,000, which rivals and even dwarfs similar suits by professionals at corporate titans like Google and Goldman Sachs. This type of bold service against fierce opposition deserves recognition.

Notwithstanding the Court's preliminary approval, the judgment of Class Counsel, the weight of the relevant factors, and Defendants' concession (at 2) that some award is appropriate, Defendants' counsel diverted time and effort away from their consumer-protection mission to launch a challenge to the amount the Class Representatives have requested when not one of the sophisticated Class Members agrees with Defendants. Defendants argue that courts grant service

awards like these only when the common fund is larger, ignoring that the benefit that class representatives deliver to a class depends on *both* the size of the fund *and* the size of the class, not just the former. Thus, Defendants miss that Paz-Chow's and Jones's courage and tenacity delivered much more to this 85-member class—a gross *per capita* recovery of over $70,000 per Class Member—than in other cases like *Little v. Washington Metropolitan Area Transit Authority*, 313 F. Supp. 3d 27 (D.D.C. 2018), in which a slightly larger fund was divided among nearly eight times as many class members whose claim forms were already accepted prior to final approval of the settlement (the total number of class members was much higher). Considering the size of classes in the relevant cases, service awards are typically equivalent to granting the class representatives an extra two or three *per capita* recoveries from the common fund. Here, Class Counsel's requested service award is *less* than the *per capita* recovery— indeed, as a percentage of *per capita* award, less than in *Little*.

Defendants only seem to recognize what an exceptional result the Class Representatives delivered when they argue that the Class Representatives will already recover so much from the claims resolution process that nothing more is warranted. This both misleadingly suggests that Class Representatives will receive "up to $300,000" (at 1, 4, 8), which is the cap on awards, not their expected recovery, and ignores that the common fund compensates for the released class claims, while service awards compensate for service to the class. A recovery from the claims resolution process is not a substitute for a service award—the whole point of the claims resolution process is that everyone recovers on the same footing, even though only two of the 85 Class Members performed services to obtain the massive recovery. Importantly, the claims resolution process also works to the detriment of Paz-Chow, who will receive a relatively small

Time in Pay Band award because his services were terminated by CFPB shortly after he filed and refused to drop his EEO complaint, which provided the basis for class relief.

At bottom, Defendants' objection to Paz-Chow's and Jones's modest service awards is their final attempt to retaliate against them for nearly a decade of valiant and successful efforts on behalf of the class, and to reduce the incentive to encourage would-be class representatives to file their own class actions in the future. The objection is baseless, and this Court should grant Class Counsel's request for a $50,000 award to each Class Representative that is eminently justified, no Class Member objected to, and this Court preliminarily found reasonable. Defendants' retaliatory strike against Paz-Chow and Jones is particularly troubling given the mission of the CFPB and its dependency on the courage of other whistleblowers to speak out against discrimination despite the amount of time that must be devoted to the fight and the personal cost. As argued below, the service awards requested are deserved and should be approved.

## ARGUMENT

I. **Paz-Chow's and Jones's Actions, Efforts, and Risks Warrant $50,000 Service Awards, and Requesting Fees and Service Awards Separately Does Not Change the Analysis**

The Bureau's laudable consumer-protection mission depends on the courage of ordinary people to bring light to wrongdoing. Defendants therefore should understand better than most that without people willing to bring unlawful conduct to light—people like Paz-Chow and Jones—the victims of wrongdoing cannot obtain redress for their injuries. Just as whistleblowers help unearth consumer-protection violations, so is "a named plaintiff . . . an essential ingredient of any class action." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Courts therefore recognize that "an incentive award is appropriate if it is necessary to induce an individual to

participate in the suit." *Id.*; *Tiro v. Pub. House Invs., LLC*, No. 11-cv-7679, 2013 WL 4830949, at *11 (S.D.N.Y. Sept. 10, 2013) ("Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny . . . .")

Courts in this District "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-0276, 2003 WL 22037741, at *10 (D.D.C. June 16, 2003) (internal quotations omitted). "In deciding whether to grant incentive awards and the amounts of such awards, courts consider factors such as the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursing the litigation." *Wells*, 557 F. Supp. 2d at 8–9 (internal quotation marks omitted). Courts also consider the "financial or reputational risk undertaken in bringing the action." *Cobell v. Jewell*, 29 F. Supp. 3d 18, 25 (D.D.C. 2014), *aff'd in part, vacated in part on other grounds*, 802 F.3d 12 (D.C. Cir. 2015).

Defendants argue that heightened scrutiny applies where the service award is drawn from the common fund, rather than out of the attorneys' fees, citing *Varacallo v. Massachusetts Mutual Life Insurance Company*, 226 F.R.D. 207, 257 (D.N.J. 2005). Defendants suggest (at 2) that they would have no issue with the requested service awards had Class Counsel requested a slightly larger percentage of the fund in fees and then sought to deduct the service awards from their own fees. This argument highlights the petty and retaliatory nature of Defendants' objection. Of course, as the Court knows, Class Counsel is seeking a fee award below the actual lodestar for nearly a decade of work and substantially reduced from the contingency fee awards typically seen in employment discrimination cases. While Defendants do not dispute that it is

reasonable to compensate Class Counsel 25% of the common fund for their risk and efforts, Defendants vehemently object to compensating their own current and former employees 1.7% of the same fund as tantamount to stealing from the absent Class Members. But suppose that instead of requesting a lower 25% fee to leave room to support service awards, as Class Counsel did here, Class Counsel sought a 26.7% fee. Class Counsel respectfully submits that this marginally higher fee would be approved, likely without objection, as still well below average, still well below the market-standard 33% contingency fee, and still well below Class Counsel's lodestar. (Dkt. 169-1, Declaration of Linda D. Friedman (hereinafter "Friedman Decl."), ¶ 61); *Kosen v. Am. Express Fin. Advisors, Inc.*, No. 02-cv-0082, at *12 (D.D.C. June 16, 2002), ECF No. 15 (awarding class counsel 35% of fund for fees and costs in employment discrimination class action that settled before discovery). If Class Counsel then requested that the same $50,000 service awards be paid out of this slightly larger but still reasonable fee award, Defendants would apparently have no objection, though the draw from the common fund is the same either way. Defendants' objection to an insubstantial matter of accounting is groundless. If the Defendants believe that the attorneys can get paid without objection, and can request to deduct service awards from their own pay without scrutiny, then they should have no objection to the common fund paying less to Class Counsel to directly compensate the courage and tenacity of the current and former employees who stood up to the Bureau.

## II.    No Class Member Objected to the Service Awards, Providing Clear Evidence of the Service Awards' Reasonableness

In its order granting preliminary approval, the Court preliminarily found that a $50,000 service award "appears reasonable, pending the fairness hearing and final settlement approval." (Dkt. 168, at 15). Since that order, the class—comprised of sophisticated Bureau employees who professionally analyze and investigate consumer financial abuses and therefore understood the

financial implications of the Settlement—was fully informed of the service awards. The notice stated that the Settlement Fund would be used to cover service awards to Named Plaintiffs and that Class Counsel would ask the Court to grant a $50,000 service award to each Named Plaintiff. (Dkt. 174-2, Exhibit A). Each Class Member has had an opportunity to object to the settlement (including the service awards), to request to speak at the fairness hearing, or to opt out of the settlement. Not a single one of the sophisticated Class Members did any of the above.

Zero objections and zero opt-outs show that the sophisticated Class Members feel that the service awards are fair and reasonable. Despite Defendants taking an extension solely so that they could gauge the class's reaction before filing their response, (Dkt. 171), Defendants omit the class's reaction entirely from their objection and instead ask the Court to weigh their opinion more heavily than the Class Members'. The Class Members have a greater personal stake in the service awards than the Defendants—whose payment is the same regardless—and have the "greatest awareness of the value and sacrifices made by the Class Representatives." *Pan v. Qualcomm Inc.*, No. 16-cv-1885, 2017 WL 3252212, at *1, *3, *13–14 (S.D. Cal. July 31, 2017) (awarding $50,000 to seven class representatives in employment discrimination case with *per capita* recovery of $5,297, explaining that despite four objections to the settlement overall, "there have been no . . . objections to the service awards"); *Sewell v. Bovis Lend Lease, Inc.*, No. 09-cv-6548, 2012 WL 1320124, at *1, *15 (S.D.N.Y. Apr. 16, 2012) (granting service award that was over 3.5 times greater than *per capita* recovery and explaining that "[n]o class members have filed any objections to the proposed service awards"). And the Class Members' unanimous reaction confirms what Class Counsel has advocated: the $50,000 service awards are reasonable. The $50,000 pales in comparison to other cases where the awards sought and awarded were considerably higher. *See, e.g.*, *Chen-Oster v. Goldman Sachs & Co.*, No. 10-cv-6950, 2023 WL

7

7325264, at *6 (S.D.N.Y. Nov. 7, 2023) (awarding four incentive awards of $250,000 each);

Final Approval Order, *Slaughter v. Wells Fargo Advisors, LLC*, No. 13-cv-6368, Dkt. 113 at 5

(N.D. Ill. May 4, 2017) (awarding six incentive awards of $175,000 each); Final Approval Order,

*Creighton v. Metro. Life Ins. Co.*, No. 15-cv-8321, Dkt. 138 at 4–5 (S.D.N.Y. June 27, 2017)

(awarding $75,000 to one class representative and $50,000 each to six other class

representatives); Final Approval Order at 5, *McReynolds v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 05-cv-6583, (N.D. Il. Dec. 6, 2013), ECF No. 616 (awarding 17 incentive awards of

$250,000 each).

### III. Class Representatives Invested Hundreds of Hours of Their Time and Endured Great Personal Costs to Prosecute the Class Claims

Defendants do not dispute that the Class Representatives invested substantial time or

endured great personal costs to prosecute this case for the class. But nor do Defendants reckon

with these facts and why the particular efforts and risks Paz-Chow and Jones shouldered in this

case justify a $50,000 service award.

Less than three years after its inception, the Bureau faced congressional hearings that

revealed rampant racial discrimination and retaliation within its ranks.[2] Several employees

testified that a majority-Black section of the Office of Consumer Response was referred to as

"the plantation."[3] Testimony demonstrated stark and statistically significant racial disparities in

performance reviews.[4] After these hearings, only Paz-Chow and Jones sought justice on behalf

of a class of Consumer Response employees through litigating a class case first at the EEOC

---

[2] *See Allegations of Discrimination and Retaliation within the Consumer Financial Protection Bureau, Part Two: Hearing Before the H. Subcomm. On Oversight and Investigations*, 113th Cong. (May 21, 2014) [hereinafter *Hearings Part II*].
[3] *See Allegations of Discrimination and Retaliation within the Consumer Financial Protection Bureau, Part Three: Hearing Before the H. Subcomm. On Oversight and Investigations*, 113th Cong. (June 18, 2014) at 14–15.
[4] *See, e.g.*, *Hearings Part II* at 1, 11, 15–16, 19.

where class certification was denied and then in this Court. In a class of 85, only the two Class Representatives' names will be publicly and persistently identified with this case.

Plaintiffs like Paz-Chow and Jones who bring a lawsuit against a current or former employer face greater risks than those in other types of cases, making "[service] awards . . . particularly appropriate in the employment context." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (granting 8.4% of settlement fund to single wage-and-hour class representative); *see also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997) ("[T]here is a fundamental distinction between litigation based on claims of racial, gender or other discrimination, and securities-based litigation . . . or antitrust suits."). For starters, an internet or PACER search will instantly reveal that Paz-Chow and Jones brought a race discrimination class action case against their employer. Prospective employers, who frequently conduct online searches of potential hires, might decide it is not worth the trouble to hire someone who has sued a former employer for race discrimination. (Friedman Decl., ¶ 55); *see also Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08-cv-7670, 2010 WL 532960, at *1–2 (S.D.N.Y. Feb. 9, 2010) (noting that employees "put in jeopardy their ability to depend on the employer for references in connection with future employment" and awarding service awards comprising 11% of fund, including 2% of fund to some individuals). Further, current employees risk their reputation and retaliation for bringing a suit against their employer. *See Sewell*, 2012 WL 1320124, at *14 ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Roberts*, 979 F. Supp. at 188 ("[T]he litigant who remains on the job can expect . . . that lower level co-workers and supervisors may perceive his or her actions as disloyalty and evidence of an attitude contrary to

the common good."). Of the 85 Class Members, only Paz-Chow and Jones stepped up to shoulder this burden.

For both Paz-Chow and Jones, the risks of suing their employer materialized. Paz-Chow sacrificed his career—at and after the Bureau—to pursue the claims that have resulted in substantial relief for the class. Paz-Chow knew that he was on a temporary contract and that by speaking up and pursuing this litigation, he placed at risk his future employment at the Bureau. In fact, a Bureau deputy informed him that if he withdrew his EEO complaint, he would be offered a permanent position at the Bureau. (Paz-Chow Decl., ¶ 8). The class owes its recovery in large part to Paz-Chow's courageous decision not to drop his complaint, continuing his pursuit of justice on behalf of the class. But the Bureau made good on its threat and did not renew his contract. (*Id.*) Paz-Chow has since applied for hundreds of positions across the banking sector, both private and in the government, and he has not been hired for a single one. He and his family have had to be extremely frugal, forgoing things such as travel and health insurance while using his savings and 401(k) for support. (*Id.*, ¶¶ 21–23.)

For Jones, working at the Bureau while pursuing this lawsuit has been incredibly difficult. After bringing this suit, she continued to go to work knowing that others within the Bureau considered her to be a troublemaker and thought she was trying to sabotage the Bureau's mission, which she deeply believed in. (Jones Decl., ¶¶ 4, 20.) Someone even told her to just "be quiet and get your money." (*Id.*, ¶ 20.) She remains fearful of retaliation, and her participation has affected her physical and mental well-being. (*Id.*, ¶¶ 22–23.) While working on the case, she was constantly reminded of her feelings of sadness and anger about the Bureau's culture, and she had to relive the long hours she put into trying to succeed at the Bureau. (*Id.*, ¶ 23.) Jones's

career has languished as she remained in the same job title and pay grade since filing this lawsuit.

Despite the consequences, both Paz-Chow and Jones remained steadfastly committed to this case, proving an invaluable resource to Class Counsel, even though both believed that they could have resolved their individual claims against the Bureau much sooner. (Paz-Chow Decl., ¶ 24; Jones Decl., ¶ 24). They then dedicated hundreds of hours over several years to prosecuting the case, aiding Class Counsel's investigation, learning substantive law and analyzing the Bureau's policies and workforce data, actively participating in discovery, sitting for lengthy depositions, and attending and presenting at challenging mediation sessions. (Paz-Chow Decl., ¶¶ 9–16; Jones Decl., ¶¶ 9–16). Their risk and hard work resulted in a $6 million Settlement Fund for 85 Class Members, an exceptional achievement.

Finally, to receive service awards, the Class Representatives must sign a general release of all claims, rather than merely class claims. (Settlement Agreement, § V.B.) Class Members, on the other hand, release only class claims. (Settlement Agreement § V.A.) Service awards therefore help compensate the Class Representatives for sacrificing their individual claims for the sake of the class. *Velez v. Novartis Pharm. Corp.*, No. 04-CIV-09194-CM, 2010 WL 4877852, at *26 (S.D.N.Y. Nov. 30, 2010) (granting enhanced service awards because named plaintiffs released additional claims); *Curtis-Bauer v. Morgan Stanley & Co.*, No. 3:06-cv-3903, Dkts. 158 at 5–8, 250 at 19 (N.D. Cal. Feb. 7 & Oct. 22, 2008) (approving $25,000 service award plus $125,000 award for each class representative's general release).

Without Paz-Chow's and Jones's investment of time, energy, spirit, and knowledge, and their shouldering of risk, there would be no class recovery. *See Cook*, 142 F.3d at 1016 (explaining that "a named plaintiff is an essential ingredient of any class action"). Yet

Defendants have the gall to suggest (at 1) that the $50,000 service awards would somehow be tantamount to stealing over $1,000 from each of the unnamed Class Members, without acknowledging that Paz-Chow's and Jones's efforts, losses, and assumption of risk enabled the Class Members' $70,000 *per capita* recovery in the first place. This argument is particularly disappointing coming from the Bureau, an agency whose work is supported by the courage of everyday individuals coming forward to bring light to injustices.

## IV.   The Outstanding Result for the Class Warrants the Requested Service Awards

Class Representatives achieved an outstanding result of $6 million on behalf of 85 Class Members, a gross *per capita* recovery of over $70,000. Despite courts regularly awarding service awards multiples larger than the *per capita* recovery, Class Counsel seeks only $50,000 on behalf of the Named Representatives, the lowest service award Class Counsel has ever sought, and less than the *per capita* recovery. *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013) (granting a $50,000 service award, which was nearly eight times the *per capita* recovery); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 184–85, 207–08 (D.D.C. 2011) (granting service award that was over 78 times the *per capita* recovery even though "representative plaintiffs in other cases have participated in the litigation to a far greater extent than was true here"); *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 75, 79 (D.D.C. 2011) (granting service awards that were twice the *per capita* recovery when class representative devoted "over 20 hours" to the case, far less time than hundreds of hours the Class Representatives devoted here).

Defendants appear to argue that the result in this case was not good enough to warrant $50,000 service awards. This widely misses the mark based on Defendants' fundamental misunderstanding of the caselaw. In determining service awards, courts are instructed to consider "the degree to which the class has benefitted from [the class representatives'] actions." *Wells*,

557 F. Supp. 2d at 9. Defendants argue that although Plaintiffs' motion cited many authorities awarding much higher service awards, those cases entailed larger common funds and therefore, they insist, greater benefits to the class. But Defendants overlook that the class's benefit depends on both the size of the fund and the size of the class. A $6 million fund distributed to 600 class members offers a very different benefit to the class than a $6 million fund distributed to 85 class members.

Yet, Defendants stake their objection (at 2–3) on pretending that the $6,000,000 fund for 85 Class Members in this case is "strikingly similar" to the $6,500,000 fund for "between 3,500 and 4,000" individuals, of which 640 had approved claims, in *Little v. Washington Metropolitan Area Transit Authority*, 313 F. Supp. 3d 27 (D.D.C. 2018). Through nine years of arduous litigation, Paz-Chow and Jones, standing alone against the might of the federal government, extracted on average $70,000 for their coworkers. The eight class representatives in *Little* obtained a *per capita* benefit of about $1,857 ($6.5 million / the more conservative estimate of 3,500 class members)—or roughly $10,000 for the 640 whose claims were already approved at the time of final approval. *Id.* at 39. The *Little* court found that eight service awards of $7,500— nearly eight times the *per capita* recovery, or 75% of the average gross recovery of already- approved claims—were reasonable. *Id.* Here, Class Counsel seeks two service awards of $50,000, a significantly lower percent of the *per capita* award in *Little*. Thus, it is perfectly consistent with *Little* that Class Counsel seeks a larger service award for class representatives who helped obtain a much larger *per capita* recovery.

13

Defendants repeat the same mistake again when attempting to distinguish cases where the Court approved higher service awards than requested here.[5] For example, in *Chen-Oster*, the class had nearly 33 times more members than the class here, and the $250,000 service awards were over three times the *per capita* recovery. *Chen-Oster v. Goldman Sachs & Co.,* No. 10-cv-6950, 2023 WL 7325264, at *1, *3, *6–7 (S.D.N.Y. Nov. 7, 2023). Defendants (at 6) note that the *Chen-Oster* class representatives spent more hours litigating that case than Class Representatives here. This difference would perhaps be relevant if Class Representatives were seeking an incentive award three times the *per capita* recovery of the class, but they are not. In fact, as demonstrated by the table below, in employment discrimination cases with service awards larger than the ones sought here, the awards were always larger than the *per capita* recovery, and sometimes many times larger.

**Service Awards in Employment Discrimination Cases**

| Case | Fund Size | Class Size | Largest Service Award | Per Capita Award | Service as % of Per Capita |
|---|---|---|---|---|---|
| *Wright v. Stern*[6] | $20,869,855 | 3,500 | $50,000 | $5,963 | 838.5% |
| *McReynolds v. Merrill Lynch*[7] | $160,000,000 | 1,433 | $250,000 | $111,654 | 223.9% |
| *Slaughter v. Wells Fargo*[8] | $35,500,000 | 342 | $175,000 | $103,801 | 168.6% |

---

[5] The service awards in *Chen v. Western Digital Corp.*, No. 819-cv-909, 2021 WL 9720778 (C.D. Cal. Jan. 5, 2021), were cited in error. However, that case continues to support the service awards sought here, as that court approved service awards that were over triple the gross *per capita* recovery.

[6] *Wright v. Stern*, 553 F. Supp. 2d 337, 339, 345, 347 (S.D.N.Y. 2008). The settlement fund in *Wright* was $11,869,856, and attorneys' fees and costs totaling $8,999,999 were awarded separately. *Id.* at 339, 347. In order to compare this case to others where the attorneys' fees were deducted from the settlement fund, this table combines the fund and attorneys' fees and costs.

[7] Final Approval Order at 3, 5, *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 05-cv-6583, (N.D. Ill. Dec. 6, 2013), ECF No. 616 (listing class size of 1,433 and service awards of $250,000); Settlement Agreement and Release at 27, *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 05-cv-6583, Dkt. 611-1 (N.D. Ill Nov. 21, 2013) (listing settlement fund of $160 million).

[8] Final Approval Order at 2, 5, *Slaughter v. Wells Fargo Advisors, LLC,* 13-cv-6368 (N.D. Ill. Apr. 28, 2017), ECF No. 113 (stating there were 342 class members and 200 potential class members and awarding service awards of $175,000); Settlement Agreement at 29, *Slaughter v. Wells Fargo Advisors, LLC,* 13-cv-6368 (N.D. Ill. Apr. 28, 2017), ECF No. 99-1 (listing settlement fund of $35.5 million).

| Case | Fund Size | Class Size | Largest Service Award | Per Capita Award | Service as % of Per Capita |
|---|---|---|---|---|---|
| *Creighton v. Metropolitan Life Insurance Company*[9] | $32,500,000 | 653 | $75,000 | $49,770 | 150.7% |
| *Senegal v. JP Morgan Chase Bank*[10] | $24,000,000 | 273 | $150,000 | $87,912 | 170.6% |
| *Bland v. Edward Jones*[11] | $34,000,000 | 809 | $150,000 | $42,027 | 356.9% |
| *Ellis v. Google*[12] | $118,000,000 | 14,077 | $75,000 | $8,382 | 894.7% |
| *Chen-Oster v. Goldman Sachs*[13] | $215,000,000 | 2,845 | $250,000 | $75,571 | 330.8% |
| This case | $6,000,000 | 85 | $50,000 | $70,588 | 70.8% |

As this table demonstrates, precedent supports larger service awards than those sought here.

At bottom, Class Counsel's request for $50,000 service awards, which is less than the *per capita* recovery in this case, is fully supported by the Class Representatives' investment and sacrifices and by the relative size of awards in similar cases. Defendants ignore the work of Class Representatives and instead suggest that their service awards are the equivalent of theft—

---

[9] Final Approval Order at 2, 4–5, *Creighton v. Metropolitan Life Ins. Co.*, 15-cv-8321 (S.D.N.Y. June 27, 2017), ECF No. 138 (stating that there were 653 class members and 37 potential class members and awarding a service award of $75,000); Settlement Agreement at 19, *Creighton v. Metropolitan Life Ins. Co.*, 15-cv-8321 (S.D.N.Y. June 27, 2017), ECF No. 101-1 (listing settlement fund of $32.5 million).

[10] Final Approval Order at 2, 5, *Senegal v. JPMorgan Chase Bank, N.A.*, 18-cv-6006 (N.D. Ill. December 20, 2018), ECF No. 40 (stating that there were 273 class members and 83 potential class members and awarding service awards of $150,000); Settlement Agreement and Release at 8–10, 30, *Senegal v. JPMorgan Chase Bank, N.A.*, 18-cv-6006 (N.D. Ill. December 20, 2018), ECF No. 6-1 (establishing settlement fund of $19.5 million, a $3 million fund for supplemental monetary awards, and a $1.5 million fund for diversity programs and initiatives).

[11] Final Approval Order at 2, 5, *Bland v. Edward D. Jones & Co., L.P.*, 18-cv-03673 (N.D. Ill. July 15, 2021), ECF No. 139 (stating that there were 809 class members and 208 potential class members and awarding service awards of $150,000); Settlement Agreement at 27, *Bland v. Edward D. Jones & Co., L.P.*, 18-cv-03673 (N.D. Ill. Mar. 19, 2021), ECF No. 119-2 (listing settlement fund of $34 million).

[12] Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action and PAGA Settlement at 6 & n.1, *Ellis v. Google,* No. CGC-17-561299, (Cal. Super. Ct., Jun. 10, 2022) (reporting a class size of at least 14,077, though noting the final class size will be larger, and a fund size of $118,000,000); Order Granting Plaintiffs' Motion for Fees, Costs, and Class Representative Service Awards at 2, *Ellis v. Google,* No. CGC-17-561299, (Cal. Super. Ct., Oct. 25, 2022) (granting a highest service award of $75,000). The class size is the most recent figure available in court documents, and later reporting lists a class size of approximately 15,500. *See* Ashleigh Webber, *Google to Pay $118m to Settle Equal Pay Lawsuit in US,* Personnel Today, Jun. 15, 2021, https://bit.ly/3tNbPkF.

[13] *Chen-Oster*, 2023 WL 7325264, at *3–4, *6 (reporting a class size of 2,845 and a settlement fund of $215,000,000 and awarding incentive awards of $250,000).

invidiously casting Class Representatives as troublemakers in the same way Bureau employees did after Class Representatives filed this lawsuit that, with Court approval, they will bring to a successful resolution.

## V.     Class Representatives Will Be Treated the Same as All Other Settlement Class Members During the Claims Resolution Process

After devoting most of the brief to arguing that the common fund is not large enough to warrant a $50,000 service award, Defendants then pivot to arguing that Paz-Chow's and Jones's hard work and sacrifice helped obtain a recovery so large that they are entitled to nothing more. First, Defendants' motion paints an inaccurate picture of what the Class Representatives stand to recover from the claims resolution process, repeatedly emphasizing that they could obtain "up to $300,000" (at 1, 4, 8). That is the absolute cap on recovery for every Class Member, and there is no guarantee that Paz-Chow or Jones will receive anything resembling the maximum award. To the contrary, Paz-Chow's short tenure at the Bureau—and he alleges it was shortened in retaliation for the very actions that enabled the class settlement—will affect his Time In Pay Band award. The Class Representatives' claims will be evaluated through the exact same process as all other Settlement Class Members. Otherwise, they would not be able to stand in the shoes of Class Members in negotiating for and agreeing to the Settlement.

Second, the service award serves a unique purpose not advanced by a simple recovery from the common fund. Every Class Member who does not opt out—here, 100% of the class—enjoys the same right to recover from the common fund to compensate them for the discrimination and retaliation they faced and the claims they release. But that common fund would not exist but for Paz-Chow and Jones first stepping forward and shouldering the heavy burden of filing and prosecuting the class claims. *Cook*, 142 F.3d at 1016. Without a separate incentive award to "induce an individual to participate in the suit," *id.*, the risks of becoming a

class representative—time, effort, risk of retaliation, permanent association with the case—would outweigh the rewards—the same right to recovery as the Class Members who did not step forward. *Parker*, 2010 WL 532960, at *1 (service awards "serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts"). The $50,000 service awards are appropriate and necessary to provide this incentive; a lesser award would under-compensate Paz-Chow and Jones and signal to would-be future class representatives that it is better to wait for someone else to stick his or her neck out.

## CONCLUSION

For the reasons stated above and in Plaintiffs' Motion for Service Awards to Class Representatives, Class Counsel is proud to respectfully request that this Court grant service awards of $50,000 each to Heynard Paz-Chow and Carzanna Jones.

Dated: January 9, 2024

Respectfully submitted,
**STOWELL & FRIEDMAN, LTD.**

By:  */s/ Linda D. Friedman*
Linda D. Friedman
(Admitted Pro Hac Vice)
George S. Robot
Truscenialyn Brooks
(Admitted Pro Hac Vice)
Caitlin M. Kearney
(Admitted Pro Hac Vice)
Stowell & Friedman
303 W. Madison St., Ste. 2600
Chicago, IL 60606
Telephone: (312) 431-0888
lfriedman@sfltd.com
grobot@slftd.com
tbrooks@sfltd.com
ckearney@sfltd.com

Justin Leinenweber
(Admitted Pro Hac Vice)

17

Justin L. Leinenweber, P.C.
120 N LaSalle St Ste 2000,
Chicago, IL 60618
Phone 312-857-3405
justin@ilesq.com